APAC-Alabama, Inc. ("APAC"), brought a breach of contract action against Cove Creek Development Corporation ("Cove Creek"). APAC alleged that Cove Creek had wrongfully withheld $81,509.12 from payment for work APAC had performed for Cove Creek as a contractor. Cove Creek argued that under the terms of the construction contract it was entitled to withhold $300 per day as liquidated damages for each day that APAC was late in completing its contract. After an ore tenus hearing, the trial court held in favor of APAC and awarded it $81,509.12 in damages. We reverse and render a judgment in favor of Cove Creek.
The parties entered into a construction contract on May 20, 1988. The contract called for the work to be completed by a deadline of October 20, 1988. The work consisted primarily of site grading, installing storm sewers and a drainage system, and construction of curbs, gutters, and roads. Cove Creek also awarded a contract to R M Construction Company ("R M") for utilities work to be completed by August 20, 1988. APAC claimed that it was forced to abandon the construction site from August 19, 1988, until September 19, 1988, because of R M's work. Because of the delay that R M had caused, Cove Creek moved the deadline back 45 days to December 4, 1988. APAC, however, did not complete construction until September 15, 1989. Consequently, Cove Creek withheld $81,509.12 pursuant to the terms of a liquidated damages clause in the contract. According to the provisions of the liquidated damages clause, APAC would pay Cove Creek $300 for every day past the deadline (adjusted to December 4, 1988). This clause also provided that Cove Creek would pay $300 to APAC for each day that APAC completed the work before the deadline.
When APAC completed construction on September 15, 1989, Cove Creek withheld $81,509.12 on the grounds that APAC had finished construction 285 days late.[1] APAC sued Cove Creek for breach of contract, claiming that no money should have been withheld under the liquidated damages clause because, it said, all of the delays were either caused by R M, changes in the specifications, or an excessive amount of rain at the construction site during the contract period. The trial court held in favor of APAC, holding that APAC's delay was excused for the following reasons:
 "[Cove Creek] was issuing change orders to the plans and specifications into August of 1989, well after the completion date [of October 20, 1988] called for in the contract. Evidence showed that while rainfall for the months of May 1988 to October 1988 averaged approximately 3.73 inches below the ten (10) year average for the affected area, rainfall *Page 460 
for the months of November 1988 to September 1989 was approximately 20.32 inches above average. Evidence was further offered to show that this amount caused the soil used to construct the road bed to pump and yield,[2] and did not allow the sub-grade to stabilize. Testimony reflected that [APAC] continued attempts to stabilize the sub-grade well into 1989. Written evidence documented that [APAC] was instructed in late April of 1989 not to lay the final layer of paving until so authorized by the project engineers.
 "[A witness for APAC] testified that [APAC] finished the contract work and change order items in September 1989, and invoiced [Cove Creek] for the final work. Evidence reflects that [Cove Creek] continued to obtain final approvals for the subdivision into November 1989, but made a final progress payment to [APAC] on September 18, 1989, wherein [Cove Creek] withheld approximately $81,509.12 from the contract amount requested by the plaintiff. ". . . .
 "This order is based on a consideration of the pleadings, the pre-trial briefs submitted by attorneys for both [APAC] and [Cove Creek], applicable law, written evidence, testimony of witnesses and oral arguments of counsel. Based on the entire record in this case, the court finds that [APAC's] delay in completing the above-described work by the date stipulated in the contract was totally excused as a result of interference with the said work by a utilities contractor [R M] hired by [Cove Creek], by changes to the plans and specifications initiated by [Cove Creek] well after the target completion date stated in the contract and by adverse weather conditions not reasonably anticipatable or foreseeable at the time the contract was entered into."
Cove Creek argues on appeal that the trial court erred because, it says, portions of the contract specifically govern any excusable delay. Cove Creek first points out that this construction contract stated that time was of the essence and then contained a liquidated damages clause applicable to any delays:
 "The number of days in which the contractor [APAC] shall fully perform the proposed work has been set out in the proposal and/or contract. The date of beginning and the time for completion of the work are essential conditions of the contract.
". . . .
 "The contractor shall commence work on a date to be specified in a written order of the engineer, and shall fully complete all work under the contract within the number of days set out in the proposal and contract. As set forth in the proposal and contract, the work under the contract will be subject to liquidated damages in the event the work is not completed within the contract time.
 "Should the contractor fail or refuse to complete the work within the time specified in his proposal and/or contract (or extension of time granted by the owner [Cove Creek]), the contractor shall pay liquidated damages in an amount set out in said proposal and/or contract.
". . . .
 "Liquidated damages: If the contractor shall fail to complete work by October 20, 1988, the contractor shall pay to the owner liquidated damages in the stipulated amount of $300.00 per day for each calendar day of delay, until the work is accepted. Owner also agrees to pay contractor $300.00 per day for each day work is completed before October 20, 1988."
The contract also provided for adjustments to the completion date made necessary by unavoidable delays, overruns, or additions to the contract:
 "In arriving at any credit due the contractor [APAC] for an extension of time on the contract, the owner [Cove Creek], upon the recommendation of the engineer, *Page 461 
may allow such credit as in his judgment is deemed equitable and just for all delays occasioned by any act, or failure to act, on the part of the contractor or caused by forces beyond the contractor's control. Additional time will also be allowed the contractor to cover approved overruns or additions to the contract in the same proportion that the said over-runs or additions in monetary value bears to the original contract amount.
". . . .
 "Time extensions may be granted upon proper justification by the contractor. Any claim for time extensions under these provisions shall be submitted in writing to the engineer not more than twenty (20) days following commencement of the delay; otherwise the claim will be waived."
The above provisions were the sole remedy provided in the contract for any delay in the construction. The contract also provided:
 "The contractor shall make no claim for extra compensation due to delays of the project beyond his control. Such delays may include those caused by any act of neglect on the part of the owner or the engineer, or by any employee of either, or by any separate contractor employed by the owner
[i.e., R M], or by any changes ordered in the work, or by labor disputes, fire, unusual delays in transportation, adverse weather condition not reasonably anticipatable, unavoidable casualties, or by delay authorized by the owner pending arbitration, or by any other cause which the engineer determines may justify the delay."
(Emphasis added.)
As the above-quoted portion of the contract shows, all of the allegedly unavoidable delays were covered by the contract. APAC was apparently aware of these provisions regarding completion date extensions, because it took advantage of those provisions in obtaining a 45-day extension on the grounds that R M's utility work had caused it to abandon the construction site. Even with this extension, however, APAC completed its work under the contract 285 days late. Further, in spite of the fact that APAC was aware of the lengthening delay, APAC never sought any other extension under the contract. As a result of this delay Cove Creek alleges that it incurred damages in interest payments alone of over $176,000.
The trial court heard ore tenus evidence on June 14, 1990. Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's findings of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v.Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar Mining Co. v.Mineral Land Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. StyleAdvertising, Inc., 470 So.2d 1194 (Ala. 1985); League v.McDonald, 355 So.2d 695 (Ala. 1978).
The record in this case shows that the trial court improperly applied the law to the facts presented. The trial court held that the 285-day delay was "totally excused" because of (1) interference by R M, (2) changes to the plans and specifications initiated by Cove Creek, and (3) unanticipated adverse weather conditions. Although all of those conditions may have indeed caused APAC not to complete its work by the deadline, we can not agree that under Alabama law these conditions constituted excusable delay so as to nullify the liquidated damages provision in the contract.
Alabama has consistently enforced building contracts that contain liquidated damages provisions that specify that for each day's delay in completion beyond a fixed date the contractor will be liable for a fixed sum. The sole caveat in this enforcement is that the liquidated damages provision must not be a penalty. See, e.g., Ray Sumlin Construction Co. v.City of Mobile, 519 So.2d 511 (Ala. 1988); Alpine Construction *Page 462 Co. v. Water Works Board of the City of Birmingham,377 So.2d 954 (Ala. 1979).
In this case, the trial court did not hold that the liquidated damages provision was void as a penalty. Rather, it held that APAC's delay was excusable. All of the reasons the trial court cited for the delay were specifically addressed in the contract. In Alpine Construction Co. v. Water Works Boardof the City of Birmingham, 377 So.2d 954 (Ala. 1979), Alpine Construction had entered into a building contract with the Water Works Board of the City of Birmingham ("Water Works Board"). The construction contract in that case contained a liquidated damages provision and a provision for extensions, both of which are remarkably similar to the corresponding provisions in the Cove Creek contract.
The liquidated damages provision at issue in AlpineConstruction provided that Alpine Construction would pay $100 per day for each day of delay in completing the construction beyond the specified time. The contract also provided for extensions of time to be granted within the discretion of the Water Works Board's engineer for delays caused by weather conditions, changes in construction orders, and any delay caused by another contractor. The contractor had five days after the occurrence of the delay in which to notify the engineer in writing and to request an extension.
Alpine Construction was 401 days late in completing the construction and the Water Works Board withheld $30,000 from its final payment. Alpine Construction sued the Water Works Board to recover the $30,000, claiming that it had been wrongfully withheld pursuant to the liquidated damages provision. Alpine Construction argued that it was entitled to be excused for its late performance under the doctrine of impossibility of performance, because of the difficulty in obtaining certain material, and it claimed that the Water Works Board had itself caused much of the delay.
This Court held that the liquidated damages provision in that contract was enforceable and that Alpine Construction's delay was not excusable:
 "Where one by his contract undertakes an obligation which is absolute, he is bound to perform within the terms of the contract or answer in damages, despite an act of God, unexpected difficulty, or hardship, because these contingencies could have been provided against by his contract.
 "It is true that equity recognizes an exception which generally will relieve a party of strict compliance with the time of performance in a contract; but this applies only where the contract does not expressly or implicitly, by its nature and purpose, make time an essential part of the agreement.
 "The contract before us expressly states that '[t]he attention of bidders is especially directed to the time required for completion of the work required under this contract' and then goes on to specify liquidated damages for 'failure to complete on time.' "
Alpine Construction, 377 So.2d at 956 (citations omitted).
Likewise, in this case, the Cove Creek contract provided that time was of the essence and then went on to specify liquidated damages for delays. The contract also contained a provision for extensions, and APAC availed itself of that provision on at least one occasion and received a 45-day extension because of delays caused by R M. We hold that APAC's delays were not excusable and that it is bound by the contract and subject to the liquidated damages provision. Therefore, we hold that Cove Creek was within its rights under the liquidated damages provision to withhold $81,509.12 for the 285-day delay. Accordingly, the judgment of the trial court is reversed and a judgment is rendered in favor of Cove Creek.
REVERSED AND JUDGMENT RENDERED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Based on 285 days' delay, Cove Creek actually withheld $85,500, but it reimbursed APAC $3,990.88 for testing costs. Therefore, the amount that Cove Creek withheld from payment was $81,509.12.
[2] This condition in the road surface is caused when there is excessive moisture in the soil upon which the road is built. *Page 463