21 So.3d 1247 (2009)
Andrea E. ADAMS
v.
Donnie M. ADAMS.
2070895.
Court of Civil Appeals of Alabama.
April 24, 2009.
*1248 Jacqueline E. Austin and J. Pratt Austin-Trucks of Law Offices of Jacqueline E. Austin, Wetumpka, for appellant.
G. Houston Howard II of Law Office of Keith A. Howard, LLC, Wetumpka, for appellee.
PER CURIAM.
Andrea E. Adams ("the mother") and Donnie M. Adams ("the father") were divorced pursuant to an April 12, 2007, judgment that incorporated an agreement reached by the parties. Among other things, the divorce judgment specified that the parties had agreed to continue residing together and to share household expenses until the marital residence could be sold. The divorce judgment awarded the mother sole physical custody of the parties' two minor sons, awarded the father visitation, and ordered the father to pay child support.
In November 2007, the mother filed a petition to modify the divorce judgment, seeking an increase of child support, asking the trial court to grant her the exclusive use of the marital residence, and requesting that the trial court require the father to share equally in paying the mortgage indebtedness on the marital residence. The mother also filed a motion *1249 seeking to have the father held in contempt for allegedly violating other provisions of the divorce judgment.
The father answered and denied liability; he later counterclaimed seeking custody of the children and reimbursement for alleged overpayments of child support and household expenses. The father also moved the trial court to hold the mother in contempt for misrepresenting material facts on the CS-41 child-support form she submitted at the time the divorce judgment was entered.
Following an ore tenus proceeding, the trial court, on May 22, 2008, entered a judgment awarding sole physical custody of the children to the father, ordering the mother to pay the father $722 per month in child support, granting the parties other relief not relevant to the issues presented on appeal, and denying all other requests for relief. On June 5, 2008, the trial court entered an amended modification judgment altering various provisions of its May 22, 2008, judgment that are not relevant to the issues in this appeal. The mother timely appealed.
The record indicates that the parties married in October 1998 and that they separated several times before the final separation that ultimately resulted in their divorce. The mother testified to several instances in which the father shoved or kicked her during their marriage.[1] The father denied that testimony, and he stated that the mother had committed acts of domestic violence against him. The father stated that, on one occasion when the mother slapped him, one of the parties' children had attempted to intervene and the mother had hit the child in the back with her fist.
The parties presented evidence pertaining to a March 14, 2007, incident in which the mother alleged that the father had kicked her and one of the children in an effort to make them move over in bed. The mother called the police after that incident. The father denied injuring the mother in that incident, although the mother insisted she had been bruised on her leg as a result of that incident. The police report indicated that there were no visible signs of injury to the mother after that incident. The mother had the father arrested in October 2007 in connection *1250 with the March 2007 incident; he was later found not guilty of the domestic-abuse charges.
Robyn Dees, a friend of the mother's, testified that she had witnessed the father verbally abuse and physically threaten the mother and that she had observed a bruise on the mother resulting from the March 14, 2007, incident. Dees also testified that she had observed the father push the mother out of his way in order to enter the parties' house after they had separated. The father testified that before he pushed the mother on that occasion, the mother had pinched him.
The mother and Dees each testified that the mother had been the children's primary caretaker during the marriage and after the parties' divorce. The mother stated that the father spent little time with the children because of his work schedule. The mother testified that either she or her parents had picked up the children after school, both before and after the parties' divorce.
The father disagreed that the mother had been the children's primary caretaker. He stated that he usually picked up the children from school and that he had often taken the children to medical and dental appointments. Several of the father's friends stated that they believed the father had been the children's primary caretaker. In addition, two of the children's teachers testified that, until the time the father filed his claim seeking a modification of custody, the father had picked up the children from school almost every day. One of the children's teachers testified that the father had accompanied her class on all the class field trips.
The father testified that he believed that the mother was attempting to interfere with his relationship with the children. The father testified that, after he filed his claim seeking a modification of custody, the mother refused to allow him extra visitation with the children in excess of the alternating-weekend and Wednesday-night visitation provided for in the divorce judgment. The mother testified that the father was never satisfied with the extra visitation she allowed and that he constantly asked for additional visitation.
The father also testified that the mother sometimes brought the children to their sporting events but refused to let them play or removed them before the end of the game, apparently because she became angry with the father. The father testified that, before the parties' divorce, he had served as the coach for both children's sports teams. After the divorce, the mother enrolled the children in sports in another city, and the father could no longer coach their teams. The mother testified that she had enrolled the children in sporting events in another city because she was under a restraining order to avoid the father and his friends as a result of an incident discussed later in this opinion.
Much of the evidence presented by the father in support of his custody-modification claim pertained to the mother's allegedly violent or confrontational conduct toward others. The father testified that the mother had had a problem with anger during the parties' marriage but that it had intensified since their divorce. The father and the witnesses he called on his behalf, including some of the children's teachers, each testified that the mother had a reputation for being confrontational and untruthful.
Several of the father's witnesses testified that they had been present when the mother cursed at the father or others during the children's sporting events. The witnesses also testified to other instances in which the mother had been confrontational with other people and had used foul *1251 language. It appears from the record that the parties' children were present or nearby during those incidents. One woman stated that she did not want her children to be around the mother because of the mother's conduct and language during those instances. Another woman testified that she had asked the mother to refrain from using foul language in front of the woman's children; the woman stated that, following that request, the mother had telephoned her several times to make "vulgar" or "aggressive" threats against the woman. A third woman also testified that the mother had made threats against her. The father testified that the mother had threatened to kill him and a woman with whom the mother believed the father was having a relationship. The mother denied making some of those threats, and she explained or attempted to justify others.
In addition, the mother testified about an incident in which she was involved in a physical confrontation with another woman at a local bar. In that confrontation, the mother jumped over chairs and onto the other woman because the woman had taken the mother's cigarettes.
The parties also presented evidence concerning an incident at a ball park in which the mother allegedly swerved her vehicle toward a woman whom the mother apparently believed was romantically involved with the father. According to the witnesses, the mother was driving through a ballpark parking lot at a high rate of speed, drove toward the woman, and then swerved away from the woman and left the parking lot. The mother testified that, during that incident, she had been angry at the father and distracted because one of the children, who was with her in the car, was sick. The mother stated that she had not seen the woman and that she did not remember swerving toward the woman. As a result of that incident, the mother was charged with reckless endangerment and the previously mentioned restraining order was entered against her. The mother later pleaded guilty to a lesser charge of reckless driving in connection with that incident.
The mother remarried in January 2008, at approximately the same time the father sought to modify custody of the children. At the time of the hearing in this matter, the mother was pregnant. A teacher for one of the children testified that the child's grades had declined since January 2008, but it is not clear whether the mother's remarriage, the custody action, or both, caused that decline.
The father is a captain with the Montgomery Fire Department. During the parties' marriage and until shortly before the modification hearing, the father's work schedule required him to work 24 hours on duty, followed by 48 hours off duty. During the parties' marriage, the father also owned and operated a lawn-care business. The father testified that he had recently begun working for the fire department on the day shift (7:30 a.m. to 4:30 p.m.) so that he would be available to care for the children if he were awarded custody of them.
The father testified that his annual salary at the Fire Department is $50,400 and that his gross monthly income is $4,200.32. He stated that, during the parties' marriage, his lawn-care business had produced income, but, he said, he was discontinuing that business because, with his change to the day shift at the Fire Department, he did not have time to cut grass, he was steadily losing customers, and the lawn-care business was "not being productive."
The mother did not work during the parties' marriage until the parties' youngest child began kindergarten. Thereafter, she worked as a legal secretary. At the time of the modification hearing, the mother *1252 was not working, apparently because of her pregnancy. The mother conceded that she was capable of earning a salary of $33,000, which was the amount she had earned at her most recent employment.
The mother first argues that the trial court erred in modifying custody because, she contends, the father failed to present sufficient evidence to satisfy the standard for modifying custody announced in Ex parte McLendon, 455 So.2d 863 (Ala. 1984). A parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in circumstances, that the proposed change in custody will materially promote the child's best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. A parent seeking to modify a previous custody order bears a heavy burden of proof. Vick v. Vick, 688 So.2d 852 (Ala.Civ.App.1997). The mother contends that the father did not meet the required burden of proof set forth in McLendon.
As an initial matter, we must address the father's contention in his brief on appeal that the mother's argument pertaining to custody was not preserved for appellate review; in making his argument, the father relies on New Properties, L.L.C. v. Stewart, 905 So.2d 797 (Ala.2004). In that case, our supreme court held that "in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review." New Properties, 905 So.2d at 801-02. The father contends that because the mother did not file a postjudgment motion challenging the sufficiency of the evidence supporting that part of the trial court's judgment pertaining to the modification of custody, the mother is prevented by the holding in New Properties from raising that issue on appeal. We disagree.
In New Properties, in entering its judgment, the trial court made no findings of fact; rather, "it simply found in favor of [the plaintiff] and awarded $250,000 in damages." 905 So.2d at 802. In the case presently before this court, the trial court made the following factual findings in its judgment:
"The Court heard numerous witnesses and observed their demeanor and also received documentary evidence. The Court finds that the [mother's] testimony was not credible. The Court further finds that domestic violence was committed by both parties during the marriage.[2] Thus, any presumptions against either party created by the domestic violence statutes (§ [§ ] 30-3-130 through -136, Ala.Code 1975) cancel each other out so that no presumption either against the [mother] or against the [father] is in place or if in place offset each other.
"The Court finds that there has been a material and substantial change of circumstances since the final [divorce judgment], and that the positive good brought about by a change of custody will more than offset any disruptive effect caused by the change in custody. The Court thus finds that the [father] has met his burden of proof under the McLendon standard."
*1253 We conclude that the above-quoted portion of the trial court's judgment contains sufficient factual findings to render unnecessary the filing of a postjudgment motion challenging the sufficiency of the evidence pertaining to the custody modification. In Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409, 415 (Ala.1993), the trial court found that a party had conducted litigation "`without substantial justification,'" and it awarded the opposing party an attorney fee pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975. In addressing the attorney-fee award on appeal, our supreme court stated that it was required to determine the appropriate standard of review. In determining that the issue presented to it involved both legal determinations and factual findings, the supreme court explained:
"The clear terms of § 12-19-271(1) require that for an action, claim, or defense to be `without substantial justification' it must be either `frivolous,' `groundless in fact,' `groundless in law,' `vexatious,' or `interposed for any improper purpose.' We conclude that the terms or phrases `frivolous,' `groundless in fact,' `vexatious,' and `interposed for any improper purpose' require factual determinations that will be entitled to deference on appeal. See, Smith v. Smith, 551 So.2d 1024 (Ala. 1989). Thus, if a trial court determines that a party's action, claim, or defense is `without substantial justification,' based on the applicability of any one of these terms or phrases, that determination will not be disturbed on appeal `unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.' Cove Creek Development Corp. v. APAC-Alabama, Inc., 588 So.2d 458, 461 (Ala.1991).
"However, we conclude that the phrase `groundless in law' clearly calls for a legal determination. Therefore, if the trial court determines that a party's action, claim, or defense is `without substantial justification' because it is `groundless in law,' that determination will not be entitled to a presumption of correctness. Rather, the appellate courts of this State will test the validity of the trial court's legal conclusion."
Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d at 418.
In this case, the phrases "material and substantial change of circumstances," "positive good," "more than offset," and "disruptive effect," see Ex parte McLendon, 455 So.2d at 865-66, encompasses matters that require factual determinations rather than legal conclusions. Those factual determinations are relevant to the legal determination whether the McLendon standard has been met. The trial court made those factual determinations, and, as is noted in New Properties, 905 So.2d at 800:
"`When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial.'"
(Quoting Rule 52(b), Ala. R. Civ. P.) Thus, we conclude that the factual findings in the trial court's judgment are sufficient to support this court's review of the mother's argument pertaining to the sufficiency of the evidence.
In her brief on appeal, the mother contends that the father's evidence did not demonstrate a material change in circumstances justifying a change in custody. The mother alleges that the father presented evidence indicating only that she *1254 has "a temper" and has used foul language; she contends that that evidence was not a sufficient basis upon which to modify custody. The mother also attempts to minimize the testimony of the father's witnesses who stated that the mother had a reputation for being confrontational and untruthful by pointing out that those witnesses were largely friends of the father's and did not know her well. Accordingly, she characterizes those witnesses' testimony as "suspect."
However, after receiving ore tenus evidence, the trial court concluded that the father had met his burden under Ex parte McLendon, supra.
"On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court's determination will not be disturbed `absent an abuse of discretion or where it is shown to be plainly and palpably wrong.' Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993) (citing Benton v. Benton, [520 So.2d 534 (Ala.Civ.App. 1988) ]). As the Alabama Supreme Court highlighted in [Ex parte] Patronas, [693 So.2d 473 (Ala.1997) ], `"[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody."' Patronas, 693 So.2d at 474 (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court's judgment. See Patronas, 693 So.2d at 475."
Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala. Civ.App.2007).
Much of the evidence the parties presented was in dispute. Each parent presented evidence concerning his or her parenting abilities and activities. In addition, the father's witnesses testified to incidents in which the mother was confrontational, used foul language in front of children, and made threats of violence against others. The mother disputed the testimony of those witnesses concerning some of the details of certain incidents or confrontations. However, the mother's own testimony indicates that she has had or has initiated a number of confrontations with others and that several of those confrontations have occurred at events in which the parties' children were present. In addition, the mother pleaded guilty to reckless driving as a result of the incident in which she is alleged to have swerved her vehicle toward another woman; one of the parties' children was in the vehicle with the mother at the time of that incident.
The father also presented evidence indicating that the mother had upset the children by removing them from their sporting events when she was angry with the father. Thus, the evidence supports a conclusion that, in addition to exposing the children to foul language and inappropriate conduct, the mother had involved the children in her efforts to fight with or to punish the father.
Further, the trial court specifically found that the mother's testimony was not credible. Accordingly, it placed more weight on the testimony of the other witnesses than on the mother's explanations of her conduct. "[T]he trial court ... was in the best position to observe the demeanor, determine the credibility, and assign weight to the testimony of each witness." Carquest Auto Parts & Tools of Montgomery, Alabama, Inc. v. Waite, 892 So.2d 422, 426 (Ala.Civ.App.2004). Our supreme court has held that the trial court's unique ability to observe witnesses and assess their demeanor and credibility "is especially *1255 important in child-custody cases." Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
A custody determination made after the trial court receives ore tenus evidence is presumed to be correct, and this court will not reverse the trial court's judgment on that issue absent a determination that the "`"evidence so fails to support the determination that it is plainly and palpably wrong."'" Ex parte Fann, 810 So.2d at 633 (quoting Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting in turn Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)). In this case, the trial court received a great deal of evidence indicating that the mother has engaged in confrontational and threatening behavior, sometimes in the presence of the parties' children. The trial court also specifically determined that the mother's explanations and other testimony were not credible. After reviewing the evidence in the record on appeal, we are unable to say that the mother has demonstrated that the trial court's custody-modification judgment was so unsupported by the evidence as to be plainly and palpably wrong. We conclude that the evidence in the record supports the trial court's finding that the father met his burden of proof under Ex parte McLendon, supra. Accordingly, we affirm as to the custody issue.
The mother also contends that the trial court erred in calculating her child-support obligation. At trial, the mother offered and the trial court admitted a Montgomery Fire Department pay stub for the father. The mother argued that the father's pay stub indicated that his monthly income was not $4,200.32, as he claimed, but was, instead, $4,860. In response to questions from the mother's counsel about his pay stub, the father explained that the figures on the pay stub that, according to the mother, indicated additional income were actually "annual leave and sick leave, ... [representing] time ... not money." The trial court was authorized to reject the mother's characterization of the numbers on the father's pay stub and to accept the father's characterization. "In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief." Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App. 1993). The trial court's modification judgment states:
"The Court heard numerous witnesses and observed their demeanor and also received documentary evidence. The Court finds that the [mother's] wife's testimony was not credible."
In Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004), our supreme court stated:
"`"Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court...."' Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996)). `When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.' Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). `[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.' Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted)."
The mother also offered and the trial court admitted the father's 2007 federal income-tax return. Citing Rule *1256 32(B)(3)(b), Ala. R. Jud. Admin.,[3] the mother argued at trial and now maintains on appeal that a depreciation deduction in the amount of $7,443 that the father took with reference to the equipment used in his lawn-care business should be added to his Fire Department income for purposes of calculating her child-support obligation. Rule 32(B)(3) provides:
"(3) Self-Employment Income.

"(a) For income from self-employment,... `gross income' means gross receipts minus ordinary and necessary expenses required to produce such income, as allowed by the Internal Revenue Service, with the exceptions noted in section (B)(3)(b).
"(b) `Ordinary and necessary expenses' does not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support."
(Emphasis added.)
"Accelerated depreciation" is in contradistinction to "straight-line depreciation." Compare 26 U.S.C. § 167 (2007) with 26 U.S.C. § 168 (2008). Under the straight-line method, depreciation is computed by dividing the adjusted basis of an asset by the depreciable life of the asset as determined by the Internal Revenue Code, 26 U.S.C. § 167, with the result that "the depreciation allowance for an asset remains equal over its useful life," Federal Power Comm'n v. Memphis Light, Gas & Water Div., 411 U.S. 458, 459 n. 1, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973). For certain assets, the Internal Revenue Code allows the assets to be depreciated more rapidly than they would be under the straight-line depreciation method, 26 U.S.C. § 168, with the result that accelerated "depreciation allowances in the early years are higher than under the straight-line method, but steadily decrease over the useful life of the asset." Memphis Light, 411 U.S. at 459 n. 1, 93 S.Ct. 1723.
If the father had depreciated his lawn-care equipment using an accelerated depreciation method, and the trial court had been trying to calculate the father's income from the lawn-care business, it would have been required, by Rule 32(B)(3)(b), to "add back" the accelerated component of depreciation. The father, however, used the straight-line method of depreciation, and the mother does not argue that the trial court should have included any income from the lawn-care business as part of the father's actual gross income.
The mother has failed to demonstrate that the trial court erred in entering its May 22, 2008, judgment; accordingly, we affirm.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., concurs in the judgment but dissents from the rationale in part, with writing.
THOMAS, Judge, concurring in the judgment but dissenting from the rationale in part.
I agree that the trial court correctly calculated the mother's child-support obligation. *1257 I concur in the judgment affirming the trial court's child-custody modification order, but I dissent from the rationale of the main opinion in part because I believe that the mother failed to preserve for appellate review any issue regarding the sufficiency or weight of the evidence.
On appeal, the mother argues that the father failed to present sufficient evidence to satisfy the standard for modifying custody announced in Ex parte McLendon, 455 So.2d 863 (Ala.1984), or, in the alternative, that the trial court's determination that the father "has met his burden of proof under the McLendon standard" was opposed to the great weight of the evidence. In New Properties, L.L.C. v. Stewart, 905 So.2d 797 (Ala.2004), the Alabama Supreme Court held that "in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review." 905 So.2d at 801-02 (emphasis added).
The main opinion holds that New Properties is inapplicable and, therefore, that no postjudgment motion challenging the sufficiency or weight of the evidence was necessary in this case because, it concludes, the trial court did make specific findings of fact with respect to whether the father met his burden of proof under the McLendon standard. According to the main opinion, those findings of fact were (1) that the mother's testimony was not credible; (2) that both parties committed domestic violence during the marriage but that any presumptions against either party arising from the domestic-violence statutes cancel each other out; and
(3) "that there has been a material and substantial change of circumstances since the final [divorce judgment], and that the positive good brought about by a change of custody will more than offset any disruptive effect caused by the change in custody. The Court thus finds that the [father] has met his burden of proof under the McLendon standard."
Items (1) and (2) do constitute "findings of fact," but neither is responsive to the sufficiency issue that the mother raises on appeal. Accordingly, items (1) and (2) are not "specific findings of fact" within the meaning of New Properties. See Weeks v. Herlong, 951 So.2d 670 (Ala.2006). In Weeks, the supreme court held that, although the trial court had issued no written findings of fact, its statements from the bench at the conclusion of the trial adequately set out the factual basis for its judgment and thus satisfied the purpose of the New Properties rule: "to allow the parties and the appellate court to understand the [factual] basis of the trial court's order." 951 So.2d at 678. Compare Peterson v. State, 842 So.2d 734, 736 (Ala. Crim.App.2001) (when, in response to appellate court's remand order instructing trial court to "make specific findings of fact regarding the appellant's double jeopardy claim," the trial court issued a conclusory statement indicating that the double-jeopardy claim was without merit, the appellate court could neither determine the factual basis for the trial court's ruling nor decide the issue presented on appeal, and, accordingly, the appellate court issued a second remand order to the trial court).
In the present case, the trial court's finding that the mother's testimony was not credible simply does not allow the parties or this court to understand the basis of the trial court's order concluding that the father had satisfied his burden of proof under McLendon. No matter how unbelievable the trial court may have found the mother's testimony, the father's *1258 evidentiary burden remained the same. The father was required to establish that "`[t]he positive good brought about by the modification [would] more than offset the inherently disruptive effect caused by uprooting the child.'" Ex parte McLendon, 455 So.2d at 865 (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)). The mother's lack of credibility could not satisfy the father's evidentiary burden. Compare Ex parte Williams, 780 So.2d 673, 675 (Ala.2000) (stating that "doubts about the [criminal] defendant's credibility cannot satisfy the burden that is, by law, on the State to prove that the [defendant's] confession was voluntary").
Nor does the trial court's finding that both parties had committed domestic violence during the marriage but that any presumptions against either party arising from the domestic-violence statutes cancel each other out allow us to understand the basis for the trial court's determination that the father had satisfied the McLendon standard. The trial court found that both parties had committed domestic violence "during the marriage." The court did not determine whether either party had committed domestic violence "since the last custody determination." Section 30-3-134, Ala.Code 1975, provides:
"In every proceeding in which there is at issue the modification of an order for custody or visitation of a child, a finding that domestic or family violence has occurred since the last custody determination constitutes a finding of change in circumstances."
(Emphasis added.) Because the trial court's domestic-violence finding addresses only what occurred "during the marriage," it cannot be construed to be a factual underpinning for the legal conclusion that the father met his burden of proof with respect to a change of circumstances "since the last custody determination." Moreover, because the trial court determined that the domestic-violence issue was a "wash," the domestic-violence finding could not have figured into its McLendon calculus. A neutral factor does not, by definition, contribute causally to a legal conclusion. See, e.g., Small v. United States, 544 U.S. 385, 393, 125 S.Ct. 1752, 161 L.Ed.2d 651 (stating that "those who use legislative history to help discern congressional intent [with respect to the meaning of the phrase `convicted in any court' in a federal felon-in-possession-of-firearm statute] will see the history here as silent, hence a neutral factor, that simply confirms the obvious, namely, that Congress did not consider the issue [whether a foreign conviction could serve as the predicate offense]").
Item (3)which is a mere recitation of the McLendon standard and a statement that the father had met his burden of proof under McLendonis not a finding of fact, but a legal conclusion representing an application of the law to the facts, or a holdingthat the party with the burden of proof had satisfied the appropriate evidentiary standard and had thus met his burden. The trial court's legal conclusion that the father met his burden did not set out any of the factual underpinnings for that conclusion.
Reciting the burden of proof that the father was required to meet per McLendon and "[s]aying that the [father] ha[d] sustained the burden of proof ... is not an adequate finding of the matters of fact involved in that issue .... It is in the nature of a legal conclusion rather than a finding of the underlying facts ...." United States v. Jefferson Elec. Mfg. Co., 291 U.S. 386, 408-09, 54 S.Ct. 443, 78 L.Ed. 859 (1934). When a trial court's decision is conclusory and does not detail or analyze the predicate facts upon which it is based, it is not a specific finding of *1259 fact. Cf. Jones v. Tyson Foods, Inc., 26 Ark.App. 51, 759 S.W.2d 578 (1988) (holding that Workers' Compensation Commission did not satisfy its statutory obligation to make "specific findings of fact" by simply declaring in conclusory fashion that claimant failed to meet the burden of proof); Ellis v. Dravo Corp., 97 Idaho 109, 111, 540 P.2d 294, 296 (1975)(statement that claimant did not sustain his burden of proof "is not a finding of fact at all but a conclusion of law").
NOTES
[1] Under the facts of this case, the trial court could properly consider the parties' conduct before they divorced. When "the divorce judgment incorporated an agreement of the parties, and there was no testimony at the time of the divorce concerning child custody issues[,] `... facts relating to the parties' predivorce conduct should be considered by the trial court in a modification hearing.'" Blume v. Durrett, 703 So.2d 986, 988 (Ala.Civ. App.1997) (quoting Wilson v. Wilson, 408 So.2d 114, 116 (Ala.Civ.App.1981)). The parties' pleadings state that the divorce judgment incorporated a settlement agreement. The mother's testimony indicates that the parties did not present evidence or testimony on the issue of custody of the children in the divorce proceeding:

"Q. Okay. And ya'll actually settled all of the issues in this case by agreement; is that correct?
"A. Yes, ma'am.
"Q. At that time did [the father] raise any issues about you taking care of the boys?
"A. No, ma'am."
Accordingly, the trial court properly considered the parties' predivorce conduct. Blume v. Durrett, supra; see also Godwin v. Balderamos, 876 So.2d 1169, 1174 (Ala.Civ.App.2003) (the trial court was not precluded from considering predivorce conduct in a case in which the divorce action was never tried); C.P. v. W.M., 806 So.2d 395, 396 (Ala.Civ.App. 2001) ("[W]e have recognized [that evidence relating to predivorce conduct may be presented when] the earlier judgment awarding custody was based upon an agreement of the parties and the facts sought to be adduced were not disclosed in the proceeding giving rise to the earlier consent judgment.").
[2] See note 1, supra.
[3] By order dated November 19, 2008, the Alabama Supreme Court amended rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. By order dated February 25, 2009, the Alabama Supreme Court amended Rule 32(A)(4) and Rule 32(B)(7), Ala. R. Jud. Admin., effective March 1, 2009. Those amendments are not applicable in this case.