34 So.3d 1287 (2009)
M.R.J.
v.
D.R.B.
2080764.
Court of Civil Appeals of Alabama.
October 9, 2009.
*1289 Larry E. Darby of Darby Law Firm, LLC, Montgomery, for appellant.
Robert W. Hendrick of Hendrick & Hendrick, Wetumpka, for appellee.
MOORE, Judge.
M.R.J. ("the mother") appeals from a judgment of the Montgomery Juvenile Court awarding custody of Z.R.J, ("the child") to the child's father D.R.B. ("the father") and awarding the mother liberal visitation at the discretion of the child's guardian ad litem. We affirm in part and reverse in part.
This is the second time these parties have been before this court. See M.R.J, v. D.R.B., 17 So.3d 683 (Ala.Civ.App.2009). In M.R.J., this court set out the pertinent procedural history:
"The record reveals that the child was born in September 2003. Until the instant proceedings, the mother had maintained physical custody of the child since the child's birth. The father testified that he had voluntarily paid some child support to the mother but that, at some point before December 2006, the mother had sought a formal adjudication regarding child support in the Montgomery Juvenile Court. In that proceeding, the juvenile court established the paternity of the child and ordered the father to pay the mother specified monthly child support.
"While the child-support proceeding was still pending, the father filed a complaint in the juvenile court on December 11, 2006, requesting that the juvenile court find the child dependent; award the father custody of the child, subject to the mother's right to visitation; and require the mother to pay child support. On March 29, 2007, the mother filed her own complaint alleging the dependency of the child and requesting that the juvenile court award her legal custody of the child.
"On December 12, 2007, the juvenile court conducted an ore tenus proceeding to hear the competing complaints seeking custody of the child. On January 25, 2008, the juvenile court entered a judgment that made no determination as to dependency but stated, in pertinent part:
"`Based on the foregoing, the Court finds and it is hereby ORDERED as follows:
"`1. That it is in the best interest of the minor child that the parties be and are hereby vested with joint legal custody of the minor child, with physical custody vested in [the father.]
"`2. That [the mother] is awarded liberal visitation, which shall be established by the Guardian ad Litem and submitted to the Court in writing for inclusion in this file.'
"The mother filed a timely notice of appeal and requested that the juvenile court appoint her an attorney on appeal."
17 So.3d at 684-685 (footnote omitted).
On appeal, this court determined that this case was a custody-modification case and that the juvenile court had incorrectly applied the best-interests-of-the-child standard. 17 So.3d at 686. Thus, we reversed the juvenile court's judgment and remanded the case for the juvenile court to analyze the evidence under the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). This court pretermited *1290 any discussion of the visitation issue. On remand, the juvenile court entered a judgment stating, in pertinent part:
"This [court] has reviewed the evidence, the [court] file & the transcript of the trial & has determined that the father met the McLendon standard for a change in custody. It was/is in the child's best int[erest] that custody be vested in the father & the benefits of such a custody change outweigh the disruptive effects."
On April 9, 2009, the mother filed a motion to alter, amend, or vacate the judgment; that motion was denied by operation of law on April 23, 2009. See Rule 59.1, Ala. R. Civ. P. The mother filed her notice of appeal that same day.

Facts
The mother had had custody of the child since the child's birth. The mother admitted that, in 2004, she had been convicted of "shoplifting" and child neglect; those convictions resulted from the mother's leaving the child, who was one year old at the time, and the mother's two-year-old son in a hotel room while the mother went to a Wal-Mart discount department store and stole diapers. Joyce McCord, a social-service caseworker with the Montgomery County Department of Human Resources ("DHR"), testified that DHR had become involved with the family at that time. McCord testified that the child had been temporarily placed in the care of the child's maternal grandmother. The mother testified that she had regained custody of the child but that her son's father had successfully petitioned for custody of her son.
At the trial, the mother admitted that she had moved approximately 12 times since the child was born and that she had also changed jobs multiple times. The mother admitted that moving that much could not be good for the child. McCord, however, testified that the moves had not been detrimental to the child but that continued moves could become a problem once the child begins school. McCord testified that she believed that the mother had changed.
The father testified that the mother had told him that one of her previous boyfriends had "jumped on her" in front of the child. The mother admitted that she had told the father that, but she stated that she had been lying. The mother also admitted that she regularly drives without a license. Further, in January 2007, the mother pleaded guilty to driving without a license, driving without liability insurance, failing to have the child in a safety restraint, and running a red light. Both the father and the mother accused each other of not showing up for visitation exchanges. The father testified that, because the mother had changed telephone numbers several times, he had been unable to get in touch with her on occasions.
At the time of the trial, the mother had married and was living with her husband and the child in a three-bedroom house that was deemed acceptable by McCord. They had lived in that house for approximately two months. The father had lived in a three-bedroom house that he had shared with his wife and their two children for almost one year. He had been employed at the same job for over two years. He testified that the child gets along well with him, his wife, and the child's half siblings. The father's wife testified that she does not work outside the home and that she will be available to care for the child full-time. The mother testified that the father had picked the child up without a car seat. The father, however, testified that the child was too old to need a car seat. Further, the mother admitted that she had not offered to let the father use her car seat. The father admitted to being *1291 behind on his child-support payments because he had been out of work for two months due to health problems. The father testified that his health problems were under control at the time of the trial.
McCord recommended that the child stay in the custody of the mother. The guardian ad litem recommended that the father be awarded custody.
Standard of Review
"`When evidence in a child-custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determinationit hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.'"
Burgett v. Burgett, 995 So.2d 907, 912 (Ala. Civ.App.2008), (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)).

Discussion
On appeal, the mother argues that the trial court exceeded its discretion in awarding custody of the child to the father. She also argues that the trial court exceeded its discretion in awarding the guardian ad litem sole discretion in determining the mother's visitation.
Custody
"A parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon[, 455 So.2d 863 (Ala.1984)]. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in circumstances, that the proposed change in custody will materially promote the child's best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra."

Adams v. Adams, 21 So.3d 1247, 1252 (Ala.Civ.App.2009).
In the present case, the evidence indicates that the child's lifestyle with the mother was very unstable. Although there was disputed testimony regarding the effect that instability had had on the child, the mother admitted that it could not be good for the child. Further, McCord admitted that the disruption caused by moving could become a problem when the child began school if the child were forced to change schools frequently. There was no indication that the mother's lifestyle had stabilized, because the mother had been living in her home for only two months at the time of the trial. The mother had also taken actions that had endangered the child, most recently when she had run a red light while driving with the child who was not in a safety restraint. The mother had also previously left the child without supervision in a hotel while she went to a Wal-Mart store to steal diapers. Finally, we note that the father testified that the mother had not shown up for visitation exchanges and that she had failed to apprise him of her new telephone number when it changed. Based on the foregoing, we conclude that the trial court could have found that a material change in circumstances had occurred.
With regard to the father, the evidence indicates that he had been employed with the same company for over two years and that he had lived in the same house for almost a year. He testified that he could provide for the child better than the mother could. He also testified that the child gets along well with him, his wife, and the child's half siblings. Further, the father's wife testified that she does not *1292 work outside the home and that she will be available to care for the child full-time. Based on that evidence, the trial court could have determined that the "change in custody will materially promote the child's best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child." Adams, 21 So.3d at 1252.
The mother also argues that McCord's recommendation should have overridden the guardian ad litem's recommendation. However, "[i]n reviewing a decision of the trial court, an appellate court is not permitted to reweigh the evidence, because weighing the evidence is solely a function of the trier of fact." Ex parte McInish, [Ms. 1060600, Sept. 5, 2008] ___ So.3d ___, ___ (Ala.2008). Thus, we find no merit in this argument. The mother also argues that the juvenile court was biased against DHR and that that prejudice adversely affected her; that her due-process rights were violated because she did not have notice that the McLendon standard applied; and that the juvenile court's judgment on remand did not comply with this court's instructions to analyze the evidence using the correct standard because the juvenile court did not make specific findings of fact. We note, however, that the mother failed to preserve those arguments because she did not present them to the juvenile court. Thus, we decline to consider them. See, e.g., Burleson v. Burleson, 875 So.2d 316, 322 (Ala.Civ.App.2003) (holding that "[t]his court may not consider an issue that is raised for the first time on appeal").

Visitation
Finally, the mother argues that the juvenile court exceeded its discretion in awarding the guardian ad litem sole discretion in determining the mother's visitation. We agree. "`Visitation is the joint right of both the noncustodial parent and the child. . . . The best interests of the child are furthered by the child being nurtured and guided by both of his or her natural parents.'" Jackson v. Jackson, 999 So.2d 488, 494 (Ala.Civ.App.2007) (quoting Johnita M.D. v. David D.D., 191 Misc.2d 301, 303, 740 N.Y.S.2d 811, 813 (N.Y.Sup.Ct.2002)). This court has consistently held that a judgment that leaves visitation to the sole discretion of the custodial parent is an abuse of discretion because it, in effect, awards no visitation. See, e.g., A.M.B. v. R.B.B., 4 So.3d 468, 471-72 (Ala.Civ.App.2007); Bryant v. Bryant, 739 So.2d 53, 56 (Ala.Civ.App. 1999); and K.L.U. v. M.C., 809 So.2d 837, 841 (Ala.Civ.App.2001). The same principle applies when visitation is at the sole discretion of the child's guardian ad litem. "A guardian ad litem is an attorney entitled to argue his or her client's case to the court as is any other attorney, but he or she is not delegated any special authority of the court." K.D.H. v. T.L.H., 3 So.3d 894, 899-900 (Ala.Civ.App.2008). Based on the foregoing, we conclude that the juvenile court exceeded its discretion in awarding, in effect, no visitation to the mother.

Conclusion
Based on the foregoing, we affirm the judgment with regard to the custody modification, we reverse the judgment with regard to visitation, and we remand the case for the entry of a judgment in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.