THOMAS, Judge.
Autumn Holt Irions (“the mother”) appeals from a judgment of the Lee Circuit Court (“the trial court”) in favor of Matthew Holt (“the father”). This is the second time the parties have been before this court. See Holt v. Holt (No. 2060172, July 2, 2007), 13 So.3d 454 (Ala.Civ.App.2007) (table). The parties were divorced in July 2006; there were two children born of the marriage. At the time of the trial in the present case the parties’ daughter and son (hereinafter referred to collectively as “the children”) were ages 13 and 9, respectively. The divorce judgment awarded the parties joint legal custody of the children, awarded the father sole physical custody, awarded the mother standard visitation, and ordered the mother to pay child support. In November 2006, the mother appealed the divorce judgment to this court; that appeal was assigned case number 2060172. This court affirmed the divorce judgment, without an opinion. The certificate of judgment was issued on August 10, 2007.
The record indicates that a judgment modifying the divorce judgment (“the modified judgment”) was entered in August 2012 and that the modified judgment awarded the mother additional visitation and increased the amount of her child-support obligation from $351.90 per month to $500 per month. Although the modified judgment has not been included in the record, it appears that the father was ordered in that judgment to maintain health insurance for the children.
This action was initiated on December 13, 2012, when the mother filed a petition for contempt and for further modification of the divorce judgment. In the petition, the mother alleged that the father had allowed the children’s health-insurance coverage to lapse and requested that, because she had obtained health insurance for the children, her monthly child-support obligation be recalculated. The mother filed an amended petition on January 16, 2013, in which she stated that the father had notified her via electronic mail that he had entered active military service and had, or was soon to be, relocated to New *959 York and, further, that he intended to relocate the children to New York. The mother requested that the trial court grant her temporary custody pending a hearing, after which, she requested, she be awarded sole physical custody of the children.
The father filed an answer and a counterclaim on January 22, 2013. In his answer, the father asserted that the children’s health insurance had lapsed when he was laid off from his job on September 18, 2012, but that it had been reinstated as soon as he became employed by the United States Army in December 2012; therefore, he contended, there was no reason to grant the mother’s request to recalculate her child-support obligation. In his counterclaim, the father requested an upward modification of child support. The father filed another answer on April 12, 2013, denying the allegations in the mother’s amended petition.
A hearing was held on April 12, 2013. Because the father had moved to New York, he appeared at the hearing via telephone; the father’s attorney personally appeared at the hearing. The trial court entered an order on April 17, 2013, in which it stated that custody and visitation would remain the same and that the children were not to be permanently relocated pending a final hearing. A trial was held on June 25, 2013, at which the trial court received evidence ore tenus. The trial court entered a final judgment on June 27, 2013, which provided, in pertinent part, that the father would retain sole physical custody of the children and that he was permitted to permanently relocate them to New York. The judgment included a visitation schedule and allotted the transportation costs between the parties. The judgment also stated that, “[d]ue to increased visitation expense for the mother, current child support is terminated in deviation from the child support guidelines.” The judgment was modified in order to correct typographical errors; the modified judgment was entered on July 1, 2013.
The mother filed a motion to alter, amend, or vacate on July 26, 2013, in which she petitioned the trial court to order the father to notify her within 24 hours of learning that he would be deployed. The father also filed a motion to alter, amend, or vacate on July 26, 2013, in which he requested that the trial court amend the visitation schedule and order the mother to pay child support. The trial court entered an order on August 28, 2013, granting the mother’s postjudgment motion and denying the father’s postjudgment motion. The mother filed a notice of appeal to this court on October 4, 2013; the father filed a cross-appeal on October 18, 2013.
The mother raises two issues in her brief on appeal: (1) whether the Alabama Parent-Child Relationship Protection Act (“the Act”), § 30-3-160 et seq., Ala.Code 1975, is applicable to a custodial parent who joins the military after an initial divorce judgment is entered and (2) whether the trial court erred to reversal in finding that a material change in circumstances had occurred but that it did not warrant a change in custody. In his cross-appeal, the father argues that the trial court erred by failing to order the mother to pay any amount of child support, in contravention of Rule 32, Ala. R. Jud. Admin.
We first address the mother’s argument regarding the Act. Section 30-3-169.4, Ala.Code 1975, provides:
“In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence *960 of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
However, § 30-3-162(a), Ala.Code 1975, provides that,
“[e]xcept as provided in subsection (c) of Section 30-3-165, this article shall not apply to a person who is on active military service in the Armed Forces of the United States of America and is being transferred or relocated pursuant to a non-voluntary order from the government.”
The mother argues that the “[father’s voluntary entry into active military duty while already under a child custody order cannot serve to defeat the rebuttable presumption against relocation pursuant to § 30-3-169.4.” Mother’s brief at 54.
Testimony at the trial revealed that the father had enlisted in the United States Marine Corp Reserves in 2000, while the parties were married, and that he had been deployed shortly before the divorce action was initiated. The father left the Marine Reserves in 2006. The father enlisted in the Alabama National Guard in March 2011. In May 2012, the father accepted a nearby full-time position with the Alabama National Guard as a recruiter. The father testified that, sometime thereafter, he was informed that his recruiter position would likely be eliminated due to a lack of funding. According to the father, he unsuccessfully applied for other recruiter positions within Alabama and also began to explore enlisting in the United States Army. The father testified that he was notified that he had been accepted into the United States Army, on active-duty status, on December 18, 2012, and that he was to be stationed at Ft. Drum in New York.
“Our standard of review is well settled. A trial court’s judgment based on ore tenus evidence will be presumed correct and will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that the judgment is unsupported by the evidence so as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). However, when an appellate court is presented with an issue of law, we review the judgment of the trial court as to that issue de novo. Ex parte Perkins, 646 So.2d 46 (Ala.1994).”
Henderson v. Henderson, 978 So.2d 36, 39 (Ala.Civ.App.2007).
The mother is correct that there is no caselaw or statute in support of her argument. The mother is also correct that courts are required to give words in a statute their “plain meaning.”
“ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
“Ex parte Master Boat Builders, Inc., 779 So.2d 192, 196 (Ala.2000) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). See also Kimberly-Clark Corp. v. Eagerton, 445 So.2d 566 (Ala.Civ.App.1983).”
Henderson, 978 So.2d at 39-40.
There is nothing included in the language of § 30-3-162 to indicate that the legislature intended to place a timing requirement on parents who enlist in the *961 armed forces for active duty. Had the legislature intended to include such a requirement, it most certainly could have. We find no reason to conclude, as urged by the mother, that the timing of the father’s enlistment in the Army voids the exemption to the Act that is provided in § 30-3-162. Therefore, we hold that the mother’s argument is without merit.
The mother next argues that the trial court erred to reversal in denying her petition to award her sole physical custody of the children.[1] The mother admits that she had to meet a high burden of proof.
“A parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ]. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in circumstances, that the proposed change in custody will materially promote the child’s best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra.”
Adams v. Adams, 21 So.3d 1247, 1252 (Ala.Civ.App.2009).
In its judgment, the trial court stated:
“In this case there is no question that a disruption in the lives of [the children] will occur and has occurred, and that there exists a material change of circumstances since the prior order in this case. There are geographic changes and there are changes in the children’s ability to have access to those they are most attached to. There is no doubt that this change will have an effect on the children. So the question becomes whether or not as a result of those changes any benefits of transferring custody to the mother will outweigh the negative impact of uprooting them from their home with their father.”
The trial court went on to point out that the children had primarily lived with the father for seven years. It was undisputed that the parties and the children had lived in the same area throughout the children’s lives, that both the maternal and paternal extended families had lived close by, and that the children had always attended the same school. The father testified that he is married and that he and his current wife have a child. The father and his current wife testified that the children are very close to their child, that his current wife has coached the daughter’s athletic teams, and that his current wife ensures that the children attend church regularly. The mother testified that she exercises all of her awarded visitation, that she attends the children’s activities, and that she seeks out opportunities to spend time with the children as much as possible, such as eating lunch with them at school.
At trial, the mother introduced into evidence posts from the father’s social-media account that could be construed as vulgar or inappropriate. The father testified that the posts were of “poor taste.” The mother also presented evidence indicating that the daughter “followed” the father’s social-media account; however, there was no evidence indicating that the daughter had. viewed the allegedly inappropriate posts.
Both parties testified about past behaviors of the other party that were either immature or lacking in good judgment. The trial court stated in its judgment that
“[b]oth parties pointed out that the other had made poor life choices, and *962 those do give the Court concern. But the Court can’t say that the mother is a measurably better parent than the father. In fact, based on its observation, the Court believes the mother’s position is just a bit more tainted with her own self interests.”
The trial court further found that,
“[i]n terms of the child’s attachments, if the children were to be placed primarily with their mother, they would have the benefit of maintaining their present local connections, including their mother, but they would largely lose their primary connection—with their father, their primary custodian over the last seven years, as well as his family.”
The standard of review of a custody determination is well settled:
“ ‘ “ ‘Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, ... and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.
“[Ex parte Bryowsky,] 676 So.2d [1322,] 1324 [ (Ala.1996) ]; see Lamb [v. Lamb], 939 So.2d [918,] 922 [(Ala.Civ.App.2006) ]; see also Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ (citation omitted)).”
Ex parte Blackstock, 47 So.3d 801, 805 (Ala.2009). Considering all the evidence, the trial court could have reasonably determined that a modification of custody would not “materially promote the child[ren]’s best interests, and that the benefits of the change would not more than offset the inherently disruptive effect caused by uprooting the children].” Adams, 21 So.3d at 1252. Because the trial court’s judgment is supported by sufficient evidence, it is not plainly and palpably erroneous, and, thus, we affirm the judgment as to this issue.
On cross-appeal, the father argues that the trial court failed to comply with Rule 32, Ala. R. Jud. Admin.[2] Rule 32(A)(1) provides, in pertinent part:
“(1) Reasons for Deviating from the Guidelines. Reasons for deviating from the guidelines may include, but are not limited to, the following:
[[Image here]]
“(b) Extraordinary costs of transportation for purposes of visitation borne substantially by one parent.”
(Emphasis added.)
The trial court stated in its judgment regarding child support: “Due to increased visitation expense for the mother, current child support is terminated in deviation from the child support guidelines.” The trial court set out in its judgment a detailed visitation schedule that specified which party would be responsible for the transportation costs. The judgment first identified four long-term visitation periods, such as Christmas and summer break, and instructed that the father pay all transportation costs associated with those visits. The judgment next stated that the mother, with proper notification to the father, had the option of exercising visitation one weekend per month and that *963 the mother would be responsible for the transportation costs associated with those visits. The judgment next provided for optional short-term visitation, primarily weekends attached to a Monday or Friday holiday from school, that the mother could also exercise with proper notification to the father. The judgment instructed the father to reimburse the mother for one-half of the costs of transportation for the short-term visits, not to exceed $200 per visit.
“This court has consistently held that ‘matters relating to child support “rest soundly within the trial court’s discretion, and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and thus is plainly and palpably wrong.” ’ Scott v. Scott, 915 So.2d 577, 579 (Ala.Civ.App.2005) (quoting Bowen v. Bowen, 817 So.2d 717, 718 (Ala.Civ.App.2001)).”
Suggs v. Suggs, 54 So.3d 921, 923 (Ala.Civ.App.2010). However, “a child in this State has an inherent right to receive support from his or her parents.” Id. (citing Ex parte Tabor, 840 So.2d 115, 120 (Ala.2002)).
Although we recognize that the father voluntarily joined the active-duty military with the knowledge that he would likely be transferred, it does not appear from our reading of the trial court’s judgment that the mother was required to “substantially [bear]” the costs of visitation-related expenses. Therefore, we reverse this aspect of the trial court’s judgment and remand the case to the trial court for the entry of a revised judgment that includes an appropriate amount of child support for the benefit of the parties’ children.
Accordingly, we affirm the judgment with regard to the trial court’s interpretation of the Act and its denial of the mother’s petition to modify custody. We reverse the trial court’s judgment insofar as it failed to award child support, and we remand the case with instructions to the trial court to enter a judgment consistent with this opinion.
APPEAL — AFFIRMED.
PITTMAN, MOORE, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
CROSS-APPEAL — REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The mother also argues that the trial court erred by allowing the children to be relocated to New York. However, our resolution of the mother’s first issue pretermits that portion of the mother's argument.

. The mother did file a reply to the father's cross-appeal.