MOORE, Judge.
Karl Kevin King (“the father”) appeals from a judgment of the Covington Circuit Court (“the trial court”) in favor of Jill Walker Barnes (“the mother”) regarding an award of postminority educational support for the parties’ two children.

Procedural History

The mother and the father were divorced by a judgment of the trial court on October 8, 1997. That judgment incorporated an agreement of the parties that, among other things, required the father to pay $375.57 per month to the mother as child support and stated:
“The parties to this cause mutually agree and understand that they shall be equally responsible for the payment of any college expenses for the minor children ... so long as said children are enrolled in college on a full-time basis, but no later than the date on which each said child reaches the age of twenty-three (23) years.”
On July 30, 2007, the trial court entered a judgment modifying the divorce judgment; that judgment read, in pertinent part:
“6. Both parents expect to assist their sons with their higher education.
“7. In fact, the parties’ original divorce [judgment] contained provisions *902 concerning support for higher education, but those old provisions are superseded hereby.
“8. The [father] shall now pay the [mother] the single sum of $600.00 per month, which sum will cover his child support and post-majority education obligation for the youngest son, and which sum will likewise cover his post-majority obligation for the oldest son.
[[Image here]]
“15. The post-majority support established by this document is subject to the following:
“A. [The father] only has to pay same for the benefit of a son of the parties if that son is a full-time student seeking a college or university degree (bachelor and/or graduate). ‘Full-time student,’ however, does not mean such son has to be enrolled in classes in the summertime.
“B. If a son of the parties drops out of school, or if his education otherwise terminates, the $600.00 per month figure payable to the [mother], as set out above, shall be cut in half. If both sons of the parties drop out of school, or if education terminates for both, the $600.00 per month figure payable to the [mother], as set out above, shall completely stop.”
The trial court amended its July 30, 2007, judgment on August 14, 2007, requiring the children to forward to the father proof of their class registration within a reasonable time of their registration in college classes and to forward “end of grade period grade reports to the [father] within 10 days of their receipt of the same.” The trial court further stated in the August 14, 2007, amended judgment that, “[s]hould the children fail to comply [with this judgment], the [father] may withhold payment until the documents set forth above are tendered.”
On March 31, 2009, the mother filed a petition for contempt against the father, alleging that the father had failed to pay postminority support as ordered. The father filed an answer and a counterclaim to the mother’s petition on May 8, 2009, in which he asserted, among other things, that he did not believe the mother was paying for the education of the parties’ children as the parties had previously agreed, that he had not been provided documentation proving that the parties’ children were enrolled in college, and that, because the father was no longer financially capable of paying postminority support, a material change of circumstances had occurred requiring modification of his postminority-support obligation.
After a trial on August 10, 2009, the trial court entered a final judgment on August 11, 2009, awarding the mother a judgment against the father for $7,200, said amount representing 12 installment payments of $600 each for past-due postminority support from July 80, 2008, through July 30, 2009, plus interest thereon in the amount of $396, plus costs. No further relief was awarded to either party. The father filed his notice of appeal to this court on September 21, 2009.

Facts

The mother testified that the father had been fully compliant with the postminority-educational-support provisions of the amended judgments until he stopped payments after July 2008. The father testified that he stopped making payments at that time because he lost his job due to the downturn in the economy. The father also testified that he had not received the registration and grade information required by the August 2007 amended judgment. Additionally, the father noted that the older son had married in November 2008.
*903 The father testified that, since he lost his job in July 2008, in which he was earning $800 a week, he had worked only sporadically and had not yet secured a full-time job. The father stated that he had sent out 245 resumes and had submitted to numerous interviews but that he had received only 1 job offer, in July 2009, which was later “postponed” due to economic conditions. As a result, he was currently receiving $1,200 per month in unemployment-compensation benefits. That income was supplemented by loans of approximately $2,000 and $1,000 from his stepfather and brother, respectively. However, the father, who has remarried and has two other young children, has been unable to meet his monthly living expenses, experiencing a shortfall of about $2,500 per month without making the postminority-educational-support payments. The father testified that he had not caught up on his bills, that his residence, which he was trying to sell, was in foreclosure, and that his electricity was about to be turned off if he did not “somehow” pay the bill. The father further testified that he owns outright two automobiles, a 1990 Ford F-150 pickup truck with 300,000 miles on it, and a Dodge Durango vehicle that was not in running condition and that has 170,000 miles on it. The father testified that he paid his attorney by using his 2009 income-tax refund.
The mother testified that she did not receive the August 2007 judgment until March 2009, when she filed her contempt petition. Subsequently, on July 28, 2009, she sent the father all of the registration and grade information required by that judgment dating from August 2008. The mother testified that, although the father did not receive the documents until July 2009, the father, through conversations with the children and through computer access, knew that the children were continuing to attend college and remained entitled to the postminority-educational-sup-port payments. The father testified that he had attempted, without success, to monitor the academic progress of at least one of the children through the school’s Web site, but he did not receive the registration and grade information until the mother sent it to him in July 2009. Until that time, he had simply taken the word of the children as to their registration and grades.

Discussion

The father first argues that the trial court erred by failing to modify his postmi-nority-educational-support obligation because, he says, the undisputed evidence revealed that a change in circumstances had occurred and that the father was no longer financially able to afford the payments.
“[T]he general principles concerning child support are equally applicable to a motion for post-minority college support.” Griggs v. Griggs, 638 So.2d 916, 919 (Ala.Civ.App.1994). “ ‘[A]n agreement between the parties fixing child support payments, when incorporated into a judgment, becomes merged into the judgment and thereby loses its contractual nature to the extent that a court of equity has the power to modify the decree when changed circumstances so justify.’ ” Thomas v. Campbell, 960 So.2d 694, 697 (Ala.Civ.App.2006) (quoting Ralls v. Ralls, 383 So.2d 857, 859 (Ala.Civ.App.1980)).
“An award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing. Browning v. Browning, 626 So.2d 649 (Ala.Civ.App.1993). The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So.2d 807 (Ala.Civ.App.1994). Whether circumstances justifying modification of sup *904 port exist is a matter within the trial court’s discretion. Id. We will not disturb the trial court’s decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So.2d 928, 930 (Ala.Civ.App.1995).”
Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997).
In Rotar v. Weiland, 591 So.2d 893 (Ala.Civ.App.1991), this court reversed a decision of the Mobile Circuit Court that failed to modify the father’s child-support obligation. In Rotar, the evidence revealed that the father had lost his job, that he had “vigorously sought employment but his efforts to earn income ha[d] failed,” that he had taken money out of his retirement plan in order to pay child support, and that he was being supported by his new wife at the time of the trial. 591 So.2d at 895. In determining that there was no evidence to indicate that the father had any means with which to pay the ordered child support and in reversing the trial court’s judgment, this court stated: “While the trial court is afforded the discretion to determine whether there has been a material change in a parent’s circumstances, it is not at liberty to ignore undisputed evidence concerning a parent’s ability to pay.” Id. See also Banks v. Spurlock, 470 So.2d 1300, 1302 (Ala.Civ.App.1985) (“A parent is entitled, upon petition for modification, to be relieved from an order of payment of child support if the evidence undisputedly shows he or she is without the financial means of complying.”).
Like in Rotar, the father in the present case testified that he had lost his job and was unemployed. The father further testified that he had sent out hundreds of resumes and that he had had numerous interviews but that he had been unable to secure employment. The father testified that he had worked sporadically since he lost his job, and the mother did not offer any evidence to refute the father’s testimony that those sporadic earnings did not enable him to pay his past-due bills. The mother also presented no evidence to dispute that at the time of the trial the father could not afford his monthly living expenses due to his involuntary unemployment and that, as a result, he did not have the ability to pay postminority support. See Miller v. Miller, 47 So.3d 262, 266 (Ala.Civ.App.2009) (“trial court did not have sufficient evidence on which to base its judgment finding that the former husband could pay his alimony obligation”); and State ex rel. Dunnavant v. Dunnavant, 676 So.2d 1329, 1331 (Ala.Civ. App.1996) (“To impute income to the father would require a finding that he was voluntarily underemployed, a finding that the trial court did not make and that the evidence would not support.”). We conclude that the trial court exceeded its discretion in failing to modify the father’s postminority-support obligation in light of the undisputed evidence that he did not have the ability to pay despite his efforts to find employment. We therefore reverse the judgment with instructions for the trial court to relieve the father of the duty to pay postminority educational support as of the date of the filing of his counterclaim on May 8, 2009, to the point the father no longer remains involuntarily unemployed or his duty to pay ends in accordance with the terms of the amended judgments, whichever is sooner.
The father next argues that the trial court erred by entering a judgment against him for an arrearage of postminority support because, he says, he had not been provided with proof of enrollment and the children’s grades as required by the trial court’s August 14, 2007, amended judgment. The father argues that that *905 judgment allowed the father to refuse payment if those documents were not provided to him and that the judgment contained no requirement that the father pay an arrear-age when payments were withheld pursuant to that provision.
The trial court’s August 14, 2007, amended judgment stated that, “[sjhould the children fail to comply, the [father] may withhold payment until the documents set forth are tendered.” (Emphasis added.)
“A trial court has the inherent power to interpret and enforce its own judgments. See, e.g., Gild v. Holmes, 680 So.2d 826, 329 (Ala.Civ.App.1996); Grayson v. Grayson, 628 So.2d 918, 919 (Ala.Civ.App.1993). ‘Judgments ... are to be construed like other written instruments .... The legal effect must be declared in light of the literal meaning of the language used.’ Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970). That is, the unambiguous terms of a judgment, like the terms in a written contract, are to be given their usual and ordinary meaning. See Thornton v. Elmore County Bd. of Educ., 882 So.2d 855, 858 (Ala.Civ.App.2003) (quoting State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000)).”
Sosebee v. Sosebee, 896 So.2d 557, 560 (Ala.Civ.App.2004).
Based on our reading of the trial court’s August 14, 2007, amended judgment, it appears that the father was entitled to withhold payments only until the documents were provided to him. In other words, the provision at issue did not allow the father to withhold payment indefinitely; rather, it allowed him to withhold payment only until the children provided the father the information set out in the amended judgment. Upon receiving that information, the father remained obligated to pay the amounts due during the enrollment periods for which proof was provided, albeit retroactively. Because the trial court ordered the father to pay those amounts to the mother, it clearly interpreted its own judgment in accordance with our reading of the provision at issue. We conclude, therefore, that the trial court did not err by ordering the father to pay past-due postminority support.[1] We note, however, that our conclusion that the trial court erred by failing to modify the father’s postminority-support obligation, as discussed above, requires the trial court to recalculate the father’s ar-rearage. Thus, the trial court is instructed to recalculate the father’s postminority-support arrearage to include the period from July 30, 2008, through May 8, 2009, the date the father filed his counterclaim for modification, as well as any additional arrearage that might have accrued since the filing of the father’s counterclaim, in accordance with our instructions above.
The father last argues that he should have been relieved of his postmi-nority-support obligation for the older son upon that son’s marriage in November 2008. The father first cites Owens v. Owens, 412 So.2d 820 (Ala.Civ.App.1982), for the proposition that “the legal duty of a *906 father to support a minor child ends when that child marries just as it would if the child reached majority or became self-supporting.” 412 So.2d at 822. Because this ease undisputedly involves postminority support, which refers specifically to support ordered after a child has reached the age of majority, we find the principles outlined in Owens, which merely aligns married children with children who have reached the age of majority and refers to support of minor children, uninstructive in this case.
The father next cites B.A. v. State Department of Human Resources, 640 So.2d 961 (Ala.Civ.App.1994), in support of his position. In B.A., the trial court declared the parents’ 18-year-old child, who had previously been found dependent, to be emancipated, and further ordered the parents to continue paying child support directly to the minor to assist him in his educational expenses so long as he remained in college. 640 So.2d at 962. This court reversed the trial court’s judgment, concluding that the general rule in Alabama is that a trial court has no jurisdiction to require a parent to provide support for a child who has become emancipated and that the exception thereto, allowing for an award of postminority support for college expenses, did not apply when the child had been emancipated at his own request. Id.
We conclude that B.A. is not applicable to the circumstances of the present case. The father in the present case had consented in the agreement that was incorporated into the parties’ divorce judgment, and again in the agreement that was incorporated into the trial court’s July 30, 2007, judgment, to be responsible for payments of the children’s college expenses. Those agreements included both a time limit and a monetary limit for the father’s payment of postminority educational support, as well as certain conditions required for payment. Neither those agreements, nor the trial court’s judgments, include a clause discontinuing the father’s obligation upon the older son’s marriage. Because the father’s support obligation was consensual, unlike in B.A., and because the father’s agreement did not include a condition terminating that obligation upon either of the children’s marriage, we conclude that B.A. does not apply. Because the father does not provide, and we are unable to locate, any authority suggesting that the older son’s marriage relieved the father of his support obligation, we conclude that the trial court did not err in not relieving the father of his obligation based on the older son’s marriage.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. The father also appears to argue that, because the required documents were provided to him two months after he had filed his counterclaim requesting relief from paying postminority support based on his alleged change in circumstances, he should not be held accountable for past-due support based on his inability to pay during the time he withheld payments. However, if a petition to modify a postminority-support obligation is granted, that modification does not retroactively relieve a parent of the support due for the period before the filing of that petition. See Fielding v. Fielding, 843 So.2d 766, 769 (Ala.Civ.App.2002) (father required to pay postminority educational expenses incurred before father sought to reduce amount of support).