64 So.3d 49 (2010)
Philla L. POH
v.
Titiana N. POH.
2090151.
Court of Civil Appeals of Alabama.
November 19, 2010.
*51 M.A. Wing, Mobile, for appellant.
Steven L. Terry, Mobile, for appellee.
*52 PITTMAN, Judge.
Philla L. Poh ("the father") appeals from a judgment of the Mobile Circuit Court denying his motion to modify custody or his child-support obligation. We affirm in part, reverse in part, and remand.
The father and Titiana N. Poh ("the mother") divorced in June 2005. The mother received primary physical custody of their child ("the child"), and the father was granted visitation rights. Custody was most recently modified in August 2008.
On May 18, 2009, the mother filed a pleading seeking to suspend or modify the father's visitation rights and to hold him in contempt, alleging that he had repeatedly engaged in inappropriate behavior in front of the child.[1] She requested that she be awarded attorney fees and costs incurred in connection with her request and that a guardian ad litem be appointed to represent the child's interests. The trial court set a trial date for September 2009, approximately four months later.
On May 27, 2009, the mother moved to immediately suspend the father's visitation rights (including overnight visits) pending the trial court's determination on her claim. The trial court granted that motion on July 10, 2009.
On July 13, 2009, the father objected to the mother's claim, averring that her contentions were unfounded. He attached to his motion a report prepared by the Florida Department of Children and Families, dated June 10, 2009, which concluded that he had not inadequately supervised, threatened harm to, sexually abused, or physically injured the child. He also asserted a counterclaim for a child-custody modification or, alternatively, for modification of his child-support obligation to reflect his alleged involuntary-unemployment status as of May 2009. The father also requested that the mother be held in contempt for allegedly having interfered with his communication and visitation with the child.
In his filings, the father claimed that the mother had neglected the child.[2] He argued that, if given primary physical custody of the child, he would move to Colorado and raise the child with the help of the child's paternal grandparents and the father's paramour. He also averred that the mother had manipulated the trial court and had denied him access to the child in order to prevent him from exercising his visitation rights, specifically as to two planned trips to Singapore to visit the father's parents.
An ore tenus proceeding was held in September 2009 at which both parties testified. At the outset of the trial, the mother withdrew her May 2009 request to suspend or modify visitation, but she asked the trial court to award her attorney fees in the amount of $1,500 and to order the father not to expose himself in front of the child. As a result, the issues before the trial court were largely narrowed to those raised by the father, including whether *53 child support should be modified in light of the father's unemployment, whether child custody should be modified, and whether the mother was in contempt as a result of her having filed motions to prevent the father from visiting the child.
The father testified that he was a worker in the petroleum industry. He had been employed by Tecorra Geo Sites, where he earned $17 per hour, until he was laid off in May 2009 because of cutbacks in the oil industry. He presented three copies of paychecks to establish that he had been employed by Applewood Quality Builders ("Applewood") on an as-needed basis after he was laid off by Tecorra Geo Sites. The paychecks were issued in June, July, and August 2009. He testified that each paycheck reflected less than 20 hours of work per week, with the lowest paycheck being for $800. The father stated that he had not been able to obtain full-time employment after his layoff; however, from his testimony, it appears that he was still in contact with Applewood to be hired as needed. When the father was asked by the guardian ad litem whether he would continue to work offshore or in international locations if he were granted primary physical custody of the child, he replied that he would limit his work to domestic jobs and that the limitation would not affect the amount of income that he had previously been able to earn.
The father was asked about a $30,000 certificate of deposit ("CD") that he had been known to have had in the past. He testified that the CD was no longer in his possession because he had used the funds from it to pay litigation costs and other expenses while he had been unemployed.
The father testified that he had lost approximately $7,000 when he had been prevented from taking the child to Singapore during the summer of 2009, as allegedly had been agreed to and planned by both parties, because the trial court had granted temporary relief as to the mother's request to suspend his visitation rights, which request had been withdrawn on the day of the trial. He further stated that the mother had forced him to cancel his plans to visit the child in Tennessee because she had claimed that the child would not be able to do anything because of an ant bite. The father rescheduled the trip, but he stated at trial that the child had later told him that it had been a "small" ant bite.
The mother testified that she had had no problem with the father's taking the child to Singapore and that she had paid half of the child's passport-renewal fee so that he could go to Singapore. The guardian ad litem later asked about a telephone conversation between himself, the mother, and the mother's husband during which the mother had said that she had "prepared the child for Singapore." She responded that the parties had never set an actual date for a trip to Singapore, but she indicated that she had wanted the child's passport to be ready if the father wanted to take him. As to the father's testimony that the mother had forced him to cancel his trip to visit the child because of an ant bite, the mother testified that she had told the father that he could come but that the child's doctor had recommended that the child receive bed rest.
The child lives with the mother, her husband, and the child's maternal grandmother. The mother testified that she depended on the father's child support, paid monthly in the amount of $450, and that she and her husband were living off her husband's military-retirement income because neither of them had found work since moving to Tennessee.
The mother testified that she and her husband had mutually decided to stop spanking the child when he was six years *54 old, although she knew of at least one instance when her husband had spanked the child after that time. During the guardian ad litem's cross-examination, the guardian ad litem represented to the mother that the child had stated "verbatim" that the mother's husband "gets aggressive." The mother responded that the child was mistaken and that her husband was a "wonderful father." The guardian ad litem also told the mother that the child had said that he could not have toys at home, but the mother responded that the child already had too many toys. The guardian ad litem further inquired about an incident that the mother had reported to him that had allegedly occurred between the father and a police officer during one of the father's visits to Tennessee. She testified that the father had received a "verbal warning" not to leave the child unsupervised in a vehicle. However, no police report was issued, and no other evidence was admitted that might have corroborated her testimony.
The guardian ad litem also inquired as to a statement made by the mother's husband concerning his intent to be present at the trial that apparently had been made during a telephone conversation involving the guardian ad litem, the mother, and her husband.[3] The mother denied having heard that statement and denied that her husband had made plans to be at the trial.
After the trial, the father filed a supplemental affidavit alleging that the mother had given false testimony as to the number of times that he had tried to telephone the child, as to his awareness of the mother's new telephone number, and as to whether the child and the mother's husband had been in Mobile during the trial. The mother responded with an affidavit denying that she had given false testimony. She stated that the child and her husband had been in Mobile during the trial but that she had neither testified that they were not in town nor otherwise misled the court.
The trial court thereafter entered a judgment granting the father's request for a modification of child support, lowering his obligation to a monthly payment of $60, and denied the father's request for modification of the custody arrangement. The court assessed a fee of $500 against the mother for the guardian ad litem's fee. The court ordered each party to be individually responsible for his or her attorney fees and costs incurred as a result of the litigation. Other requests, aside from those specifically ruled upon by the court were, denied.
Following issuance of the trial court's judgment, the mother filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P, asserting that the father had not presented sufficient evidence of a change in circumstances to warrant a reduction of his support obligation based on a claim of loss of employment or an inability to earn. Specifically, she asserted that the father had previously admitted that he had the $30,000 CD and that the three paychecks he had submitted at trial were not enough to establish income, self-employment income, or changed income under Rule 32, Ala. R. Jud. Admin. She requested a hearing on her motion. The father objected, arguing that he had established a material change in circumstances with respect to his income sufficient to warrant modification of child support because, he said, he had presented *55 reliable documentation of a changed income and had testified, without dispute at trial, that the $30,000 represented by the CD had been expended. Further, the father stated that the mother was not entitled to a hearing on her motion because, he said, she had not presented new evidence. Without holding a hearing, the trial court granted the mother's postjudgment motion and amended the judgment to order the father to maintain his former child-support payments of $450 per month.
The father thereafter appealed to this court. In his notice of appeal, he stated that his child-support obligation should have been modified because of his presentation of evidence indicating that his income had decreased. In his brief, the father claims that the trial court (1) erred in granting the mother's motion to amend the court's initial judgment modifying child support; (2) acted outside its discretion in failing to assess fees against the mother to reimburse him for the loss of certain moneys paid, the loss of which had ostensibly been caused by the trial court's initial interim order granting the mother's request to suspend visitation (which request was later withdrawn); and (3) erred in failing to grant the father sole custody of the parties' child.
We first address the issue whether the trial court erred in amending its judgment, thereby denying the father's request for modification of his child-support obligation. The father argues that the trial court erred in amending its judgment because it granted the mother's postjudgment motion without a hearing, and she contends that he was entitled to a modification based on the evidence he presented at trial. We address each argument in turn.
The trial court did not err to reversal in amending its judgment without holding a hearing because the father, as a party aggrieved by both the initial judgment and the amended judgment in some respects, did not himself file a postjudgment motion requesting a hearing at any time. Although the father cites Chism v. Jefferson County, 954 So.2d 1058, 1086 (Ala.2006), a case in which the Alabama Supreme Court applied the rule that the trial court must grant a hearing on a postjudgment motion to alter, amend, or vacate if the movant requests a hearing on that motion, we find this rule unhelpful to the father for two reasons. First, the father is simply not in a position to rely on Chism to his benefit. In Chism, the aggrieved party had filed a Rule 59 motion and had requested a hearing on the motion. The Alabama Supreme Court stated that it is error for a trial court to deny an aggrieved party's request for a hearing on that party's Rule 59 motion because to do so would deny the aggrieved party its "`opportunity to be heard'" under Rule 59(g), Ala. R. Civ. P. Chism, 954 So.2d at 1086; see also Ex parte Evans, 875 So.2d 297, 299 (Ala.2003).
The father makes no effort in his appellate brief to reconcile the differences between the procedural posture of this case and the procedural posture of Chism. In order for us to conclude that the trial court indeed erred, we must first accept the father's assumption that the mother's Rule 59 motion and request for a hearing operated to give both parties a right to a hearing. However, we reject the father's assumption because the father neither filed the Rule 59 motion at issue nor filed a Rule 59 motion requesting a hearing.[4] Although *56 the trial court ruled on the mother's motion without a hearing, the father is not in a posture to assert that the trial court erred by doing so.
Second, assuming that the father had an opportunity to be heard under Rule 59(g) by virtue of the mother's request for a hearing on her Rule 59 motion, we hold that any such error committed by the trial court was invited because the father actively advocated to the trial court that the mother's Rule 59 motion did not warrant a hearing. Assuming that the mother's Rule 59 motion and request for a hearing would ordinarily have entitled her to a hearing, and that the father could properly rely upon the mother's right to be heard as a general matter, the father's response to the mother's Rule 59 motion amounts to an express waiver of error concerning any opportunity to be heard that he might have claimed, a position that is wholly inconsistent with his argument on appeal that the trial court committed reversible error under Chism.
The father next argues that the trial court erred in not modifying his child-support obligation because, he says, (a) he presented evidence at trial establishing that he had involuntarily suffered a loss of income and (b) the mother failed to offer evidence to support the proposition advanced in her Rule 59 motion that the initial judgment modifying child support was improper, did not reflect the father's income or resources, and did not comply with Rule 32, Ala. R. Jud. Admin., or the child-support guidelines. However, the father cites no statutes, caselaw, or other legal authorities compelling this court to accept his position. Although a party on appeal "shall" submit "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on," see Rule 28(a)(10), Ala. R.App. P. (emphasis added), it is "[t]his court's policy [. . .] to determine every case upon its merits if we can reasonably and rationally do so without undue stress to the statutes, rules or precedents which govern our review of cases." Brindley Constr. Co. v. Flanagan Lumber Co., 441 So.2d 907, 909 (Ala.Civ.App.1983); see also Rule 1, Ala. R.App. P. Adhering to that principle, we address the merits of whether the trial court erred in ultimately denying the father's request for modification of his child-support obligation.
When a party seeks to modify a child-support obligation, he or she bears the burden of establishing that a modification is warranted by demonstrating a material change in circumstances that is substantial and continuing. King v. Barnes, 54 So.3d 900, 903 (Ala.Civ.App.2010). The father posits that the undisputed evidence warranted a modification. We agree.
The record clearly shows that the father earns markedly less income than when his child-support obligation was previously determined by the trial court. The father presented undisputed evidence demonstrating that he had been laid off from his job in the petroleum industry since May 2009 because of cutbacks in that industry. He further presented undisputed evidence, in the form of three paychecks, indicating that his monthly income since that time had been approximately $850. The mother argued in her Rule 59 motion, which *57 was ultimately granted by the trial court, that the father's testimony and evidence of paychecks was not enough to establish a material change in circumstances under Rule 32, Ala. R. Jud. Admin.
The issue whether the evidence presented by the father establishes circumstances warranting a child-support modification is initially to be determined by the trial court, and that determination will be disturbed on appeal only if it is shown "`that the trial court abused [its] discretion or that the judgment is plainly and palpably wrong.'" King, 54 So.3d at 904 (quoting Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997)).
Although the trial court denied the father's request for a modification, that court's reason for doing so is unclear from the record, and that court did not set forth findings of fact in its judgment. If the trial court's judgment was based on its intent not to give weight to the undisputed evidence presented by the father, such a determination is not a sound basis for affirmance in light of our holdings in Rotar v. Weiland, 591 So.2d 893, 895 (Ala.Civ. App.1991), and, more recently, in King, supra. The facts of those cases are similar to the facts presented here. Like the father in this case, the fathers in Rotar and King sought to modify their child-support obligations because they had not earned substantial income after being laid off from their jobs, despite their efforts to find work. In each case, we reversed the trial court's judgment on the ground that the father had sufficiently established a change in circumstances warranting modification of child support. Additionally, in King, the father argued that his ability to work only sporadically and his failure to secure a full-time position for a period longer than a year warranted a reduction of child support. Likewise, the father here presented equally, if not more, compelling evidence of his efforts to secure full-time employment because he demonstrated efforts to earn money within the four-month period between his layoff and the trial notwithstanding his failure to secure full-time employment. Further, the father in Rotar used savings to pay child support following his layoff, just as the father here used funds from the CD; the father in Rotar was also in the process of pursuing other possible opportunities, just as the father in this case was with Applewood, in the months following his layoff. As in King, in concluding that the father could not reasonably satisfy his child-support obligation, this court in Rotar recognized that, "[w]hile the trial court is afforded the discretion to determine whether there has been a material change in a parent's circumstances, it is not at liberty to ignore undisputed evidence concerning a parent's ability to pay." 591 So.2d at 895; see also Wise v. Wise, 396 So.2d 111, 113 (Ala.Civ.App.1981) (reversing a trial court's judgment after determining that it could have reached its decision only by disbelieving undisputed evidence, which that court "was not at liberty to do").
The dissenting opinion posits that the father established a period of unemployment that is not sufficiently "continuing" in nature to constitute a material change in circumstances that is "substantial" and "continuing" under Rule 32(A)(3)(b), Ala. R. Jud. Admin. In support of that position, the dissent suggests that this case is distinguishable from Rotar and King because the obligors in those cases had been unemployed for nine months or longer. Although the obligors in those cases had indeed been unemployed for longer than the four-month period during which the father in this case was unemployed, we nonetheless deem Rotar and King persuasive because those cases stress the nature of the in-depth *58 factual inquiry by the trial court that such cases entail. In this case, the change-in-circumstances determination made by the trial judge was a factual one that might warrant deference were it not for the fact that the father's claim and the evidence he presented was undisputed, leaving the trial court no valid factual basis on which to have found that the father's circumstances would not continue to exist for an indefinite period in the future. As we have stated, a trial court's "discretion is not unbridled," and that court "is not at liberty to ignore the undisputed evidence concerning a parent's ability to pay." State ex rel. Smith v. Smith, 631 So.2d 252, 254 (Ala. Civ.App.1993).
If the dissent were correct, we would necessarily conclude that a four-month period of unemployment cannot be sufficiently "continuing." Adopting such a bright-line rule would go against well settled principles and would promote an unfavorable public policy by denying access to the courthouse to those whose employment situation has drastically, yet recently, changed for the worse. If anything, our jurisprudence holds that each domestic-relations case is factually unique, especially with regard to a noncustodial parent's ability to pay child support to the other parent because the financial status of parties varies widely from case to case (as do the needs of their respective children).
For that reason, this court has, on numerous occasions, stated that "`[c]hild support is always subject to modification based upon changed circumstances and a parent's ability to pay.'" Lo Porto v. Lo Porto, 717 So.2d 418, 421 (Ala.Civ.App. 1998) (quoting Gordy v. Glance, 636 So.2d 459, 461 (Ala.Civ.App.1994)) (emphasis added) (holding that clear error occurred when a trial court awarded a custodial parent real property as an advancement of the noncustodial parent's child-support obligation for two years after the divorce because the judgment did not practically permit the obligation to be modified during that two-year period); Gordy, 636 So.2d at 461 (noting that child support is always subject to modification based on changes in circumstances such as a parent's ability to pay; consequently, a custodial parent may be entitled to an increase in support in the future, if warranted); and Cole v. Cole, 540 So.2d 73, 75 (Ala.Civ.App.1989) (rejecting a trial court's judgment that "would have prevented any further modification of child support for any reason, regardless of how radically such circumstances or needs might be altered by future events").
As a reviewing court, we are not in a position to "`assume error or presume the existence of facts as to which the record is silent.'" Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App.2006)). Adhering to this principle, we next consider whether the trial court's judgment is sound despite our conclusion that it could not have permissibly chosen to disregard the undisputed evidence of the father's decreased income. There are two potentially viable bases on which the trial court could have based its decision. However, if we assume that the trial court did rely on either of those bases, we are required to reverse the trial court's judgment to the extent that it is based on a finding that the father did not establish a change in circumstances warranting a modification of his child-support obligation or to remand the case back to the trial court for it to make findings of fact and to enter a judgment that is consistent with our decision.
The first possible scenario is that the trial court imputed income to the father, at the level at which he had previously earned income, because it determined that *59 the father had failed to establish that he could no longer pay $450 per month. The trial court made no express finding as to the father's actual or imputed income. In light of the undisputed evidence establishing a decrease in the father's income, however, under Rule 32(B)(5), Ala. R. Jud. Admin., the trial court could have made its determination as to the father's child-support obligation only if it found that the father was voluntarily underemployed.
Under Rule 32(B)(5), "[i]f the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent's imputed income." Although the trial court did not make an express finding that the father was voluntarily underemployed and did not expressly refer to Rule 32(B)(5) in reaching its ruling, we made clear in Herboso v. Herboso, 881 So.2d 454, 456 (Ala.Civ.App. 2003), that a trial court may implicitly determine that a parent is voluntarily underemployed. In Herboso, the record contained evidence indicating that the father had more earning potential than the mother because he was experienced in multiple fields of work, that the father had unilaterally started a college-tuition fund for the child and had voluntarily obligated himself to make payments to the fund, that the father had voluntarily quit his job and had accepted an early-retirement package, and that the father had testified that he had received his real-estate license and had secured a position with a realty company. In its judgment, the trial court in Herboso, expressly determined that the father was underemployed and stated that its child-support award was based on the father's underemployment. Based on the record, we held that "the trial court's imputation of income to [the father] and its express determination that its child-support award was not in compliance with the Child Support Guidelines because of the [father]'s underemployment indicates that the trial court implicitly found the [father] to be voluntarily underemployed." 881 So.2d at 456.
This case is significantly different from Herboso. The record in this case reveals no evidence indicating that the father had voluntarily quit his job, had secured other employment with an expected income comparable to his previously earned income, or had voluntarily undertaken certain financial obligations. To the contrary, the father here presented uncontradicted testimony demonstrating that he had been laid off against his will and that he had tried to secure employment since his layoff. Additionally, he demonstrated that, while pursuing efforts to secure full-time employment, he had worked on an as-needed basis each month after he had lost his job.
Under Rule 32(B)(5), Ala. R. Jud. Admin., when "determining how much income should be imputed to a party paying child support, the [trial] court should determine the employment potential and probable earning level of that parent, based on that parent's recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community." Herboso, 881 So.2d at 457. This rule impresses on the trial court the responsibility to conduct a factual inquiry into those factors. For this court to conclude that the trial court correctly, if implicitly, found the father in this case to have been voluntarily unemployed or underemployed despite evidence to the contrary that is both uncontradicted and undisputed, there must be other evidence in the record to support the judgment. Although it is well settled that "'where the trial court does not make specific factual findings, this court will assume *60 that the trial court made such findings as would support its judgment,'" Herboso, 881 So.2d at 456 (quoting Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App. 1997)), the record here simply fails to support any implicit finding of voluntary unemployment or underemployment. The mother did not present evidence to contradict, nor did she even attempt to dispute, the father's testimony or evidence regarding his unemployment status. In fact, the only testimony elicited by the mother bearing at all on the issue of child support was that she had relied on the father's monthly payments to pay for things for the child. Further, the trial court conducted no inquiry of its own to supplement the evidence presented by the father or to test the father's credibility. Accordingly, we conclude that the trial court here could not properly have implicitly found the father to be voluntarily unemployed or underemployed.
The second possible ground on which the trial court could have based its decision is that it did not find the father's testimony credible with respect to his use of the $30,000 represented by the CD and, therefore, despite the father's decreased income, determined the $450 child-support obligation to be justifiable in light of the father's ownership of that CD. If that was indeed the basis for the trial court's decision, however, that court would have made a determination of the appropriate level of child support without reference to the parties' incomes and, therefore, would have deviated from the child-support guidelines set forth in an appendix to Rule 32, Ala. R. Jud. Admin., in which event it would have been required to make an express determination that application of the guidelines would be manifestly unjust or inequitable and to state its reasons for deviating from the guidelines. See Rule 32(A).
If the trial court fails to apply the guidelines or to expressly determine, based upon evidence before the court, that the guidelines should not be followed, this court will reverse. See State ex rel. Roye v. Hogg, 689 So.2d 131, 133 (Ala.Civ.App.1996); see also State ex rel. Roberts v. Roberts, 725 So.2d 980, 981-82 (Ala.Civ.App.1998). Because the trial court in this case could not properly have implicitly determined that the father was voluntarily unemployed or underemployed so as to warrant imputing income to the father, and because the trial court did not expressly declare the fact of, and its reasoning for, any deviation from the child-support guidelines, we reverse the child-support judgment and remand the case to the trial court to render a judgment in accordance with Rule 32, Ala. R. Jud. Admin., either by justifying its deviation from the guidelines or by entering a judgment conforming to the guidelines.
As to the remaining issues on appeal, the mother argues that the issues whether the trial court acted outside its discretion in failing to assess fees against the mother or whether it erred in not awarding primary physical custody to the father were not preserved for this court's review because they were not raised in the notice of appeal or a postjudgment motion. The mother's argument regarding the notice of appeal has no foundation because we are allowed to address issues not specifically raised in the notice of appeal. Rule 4(a), Ala. R.App. P. Even though the father did not file a postjudgment of his own after the trial court granted the mother's Rule 59 motion, the remaining two issues that the father has raised on appeal were, without question, also raised by him in the trial court. However, we need not resolve that conflict because, assuming, without deciding, that the remaining two issues are properly before this court, we nonetheless affirm the trial court's judgment on the merits of the remaining two issues. We discuss each in turn.
*61 The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court's contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence. Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006) (affirming a trial court's decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children). Here, the evidence supports the trial judge's decision not to hold the mother in contempt, and we perceive no factual basis on which to conclude that the trial court has acted outside its discretionary authority. The trial court's judgment stated that each party would be responsible for his or her attorney fees. This ruling is undisputedly sound, especially in light of the fact that the litigation, although initially commenced by the mother, was made more complex by the father's counterclaims on the separate issues of modification of child support and custodyclaims that were by no means compulsory. Moreover, the trial court ordered the mother to pay the fees of the guardian ad litem, which are customarily allocated between litigants even if the appointment of a guardian ad litem is requested by one party, as it was here. The trial court's assessment of those fees solely against the mother, together with its decision to make each party responsible for that party's own attorney fees, spared the father the burden of substantially all the litigation costs attributable to the mother's initial claim. For those reasons, the trial court's decision not to proceed further and hold the mother in contempt is sound.
We likewise affirm the trial court's decision not to modify child custody. In order for custody to be modified it is well settled that a moving party must establish that a material change in circumstances has occurred, that the proposed modification is in the best interest of the child, and that the modification will promote the welfare of the child. Ex parte McLendon, 455 So.2d 863, 865 (Ala.1984). In the present case, the father testified that the mother had neglected the child by not teaching him to use a computer, to swim, and to use eating utensils. He also testified that the child had been hurt emotionally because the mother had manipulated the father's visitation plans, a state of facts that the mother denied. Additionally, the father testified that the mother's husband had applied corporal punishment on the child over the father's opposition. The mother testified that she and her husband had stopped spanking the child when he turned six years old and that she knew of only one instance when her husband had spanked the child thereafter. Although the father testified that the child was improperly medicated and that his grades were sometimes bad, there was no additional evidence presented to substantiate his testimony or to dispute the mother's testimony denying those claims.
As an appellate court, we are not permitted to substitute our own assessment of the evidence for the trial court's judgment. Adams v. Adams, 21 So.3d 1247, 1255 (Ala.Civ.App.2009). In reviewing custody determinations on appeal, we presume that the trial court's judgment is correct; we will only disturb that judgment when a trial court has acted outside its discretion or when the judgment is plainly or palpably wrong. See Adams, 21 So.3d at 1254-55. We further note that a "trial court's unique ability to observe witnesses and assess their demeanor and credibility `is especially important in child-custody cases.'" Id. (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala. *62 2001)); see also Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981) ("In child-custody cases especially, the perception of an attentive trial judge is of great importance."). Our review of the evidence as to the issue of custody reveals that this is, in essence, a "swearing match" pitting the father's words against those of the mother. In light of the trial court's superior ability to judge the witnesses' testimony, we cannot say that that court acted outside its discretion or that its ruling was unsupported by the evidence so as to be plainly or palpably wrong.
Because we affirm the trial court's judgment with respect to the trial court's child-custody award and decision regarding costs and fees, the mother's motion for leave to submit supplemental arguments on the merits of those issues is denied, as moot.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., concurs.
BRYAN and MOORE, JJ., concur in the result, without writing.
THOMAS, J., concurs in part and dissents in part, with writing.
THOMAS, Judge, concurring in part and dissenting in part.
I concur with the main opinion insofar as it affirms the trial court's denial of the father's petition to modify custody and insofar is it affirms the trial court's decision not to hold the mother in contempt. However, I dissent from the main opinion insofar as it reverses the trial court's denial of the father's petition to modify his child-support obligation.
"An award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing." Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997). I do not think that the father could, at the time of trial, which occurred only four months after he was laid off from his employment, show that the change of his circumstances was sufficiently continuing in nature to warrant a modification of his child-support obligation. I find that the facts of this case are distinguishable from Rotar v. Weiland, 591 So.2d 893 (Ala.Civ.App.1991), and King v. Barnes, 54 So.3d 900 (Ala. Civ. App.2010), on which the main opinion relies. The father in Rotar had been unable, despite his best efforts, to find meaningful employment for a period of over nine months. Rotar, 591 So.2d at 894-95. The father in King had been unable to find meaningful employment for a period of over one year. King, 54 So.3d at 904. Thus, the fathers in Rotar and King had experienced meaningful changes in their circumstances that had lasted far longer than the changes of the father's circumstances in this case. Consequently, the father, although he may have experienced a material change in his circumstances, could not yet show that that change was continuing in nature at the time of trial. Therefore, I would affirm the trial court's denial of the father's petition to modify his child-support obligation.
NOTES
[1] The child was eight years old at the time this action was initiated.
[2] The father alleged that the mother had not taught the child how to use eating utensils, how to swim, or how to use a towel; that the child had not been taught or allowed to use a computer; that the mother had spoken poorly of the father in the child's presence; that the mother and her current husband had told the child he was "stupid" and "an idiot"; that the mother had improperly medicated the child; that the mother and her husband had watched television with the sound set at a high volume late each night and had ignored the child when he had asked them to turn the volume down; that the child had been prohibited from playing outside; and that the mother's current husband had imposed corporal punishment on the child.
[3] The guardian ad litem later told the judge that he thought that the mother's husband would be present at the trial and that the guardian ad litem's cross-examination had been planned accordingly.
[4] The father had two opportunities as an aggrieved party to file a Rule 59 motion and request a hearing in which the trial court could revisit each parties' claims and the evidence presented at trial. He could have filed a Rule 59 motion directed to the trial court's initial, unamended judgment because the trial court had denied his claim that the mother should be held in contempt for interfering with his visitation rights and his claim for modification of custody. He also could have filed a Rule 59 motion, and requested a hearing, after the amended judgment was entered leaving child support unmodified. Instead, he chose to do neither.