PER CURIAM.
John E. Vajner, Jr. (“the former husband”), appeals from a judgment of the Mobile Circuit Court holding him in contempt of court for failing to pay periodic alimony, awarding Suzanne P. Vajner (“the former wife”) a periodic-alimony arrearage of $24,420, denying his request for a temporary suspension of his obligation to make periodic-alimony payments, and denying his request for a modification of the former wife’s child-support obligation. We affirm.

Facts and Procedural History

On September 4, 2008, the trial court entered an order finding that grounds for divorcing the parties existed; that order also provided for the custody and support of their triplet sons, pursuant to the parties’ settlement agreement. The trial court awarded sole physical custody of two sons to the former husband and sole physical custody of one son to the former wife, ordered the former wife to pay the former husband child support in the amount of $114 per month, and made the former husband responsible for health insurance coverage and noncovered medical and dental expenses for all three children. The trial court reserved all other issues.
Six months later, in March 2009, the former husband, a civil engineer, was laid off from his job at a Mobile engineering firm when the firm’s client, ThyssenKrupp Steel USA, LLC, canceled the project on which the former husband had been working. Following a hearing on the reserved issues, the trial court entered a judgment on September 17, 2009, that, among other things, determined that the former husband “ha[d] demonstrated an ability to earn in excess of $140,000 per year” and ordered him to pay the former wife $2,000 per month in periodic alimony. The trial court also ordered the marital residence to be sold and the net proceeds to be divided equally between the parties; awarded possession of the marital residence pending such sale to the former husband and made the former husband responsible for the mortgage indebtedness, insurance, maintenance, and taxes on the residence; awarded the former husband all financial accounts in his name; and required the former husband to pay *26 the private-school tuition for the son in the custody of the former wife. The former husband did not appeal from the September 17, 2009, judgment.
Four months later, the former wife filed a complaint seeking a finding of contempt as to the former husband, alleging that he had failed to make any periodic-alimony payments. The former husband answered and counterclaimed, asserting that he continued to be unemployed and seeking a temporary suspension of his obligation to make periodic-alimony payments until he had obtained employment. He also sought a modification of the divorce judgment to increase the former wife’s child-support payment. At the time of the trial of this case in August 2010, the marital residence had been sold, yielding net proceeds of $78,681.61.
The trial court heard the testimony of the parties and received.documentary evidence. The former wife, a 46-year-old ultrasound technician at a Mobile physician’s office, submitted her 2009 federal-income-tax return showing an adjusted gross income of $48,901. She testified that during the 11 months after the entry of the September 17, 2009, judgment she had incurred credit-card indebtedness of approximately $20,000 because, she said, her monthly gross income of $3,643 was insufficient without the former husband’s periodic-alimony payments to cover her monthly living expenses. Over the objection of counsel for the former husband, the trial court admitted documentary evidence indicating that the former husband had retirement accounts totaling more than $1 million.
The 53-year-old former husband has a bachelor’s degree in mechanical engineering from Purdue University. His 2008 and 2009 federal-income-tax returns show adjusted gross incomes of $104,060 and $31,452, respectively. The former husband testified that his 2008 return reflected the “most he had ever made” as an engineer; he said that his 2009 return reflected 2 months’ salary ($21,860) before he had been laid off and 10 months of unemployment-compensation benefits after he had been laid off — benefits of approximately $1,000 per month that, he said, had constituted his only income since March 2009. The former husband stated that he had monthly expenses of $4,675, including an $883 monthly premium on a health-insurance policy for himself and the two children in his custody, and a $1,167 mortgage payment before the marital residence had been sold and, afterwards, monthly rent of $850. In addition, he said, he had been paying the private-school tuition of $1,073 per month for the son in the custody of the former wife. He testified that during the 17 months after his layoff he had paid the living expenses for himself and the two children in his custody by using his unemployment-compensation benefits, the funds in his checking account and two savings accounts, and “some help from family.” He said that the two savings accounts, which had contained a combined total of approximately $30,000 in March 2009, had been reduced to a combined total of $2,686 by August 2010. The former husband acknowledged that he could have used the funds in those accounts to make his alimony payments, but, he said, he had “chose[n] not to” do so. He testified that he had not withdrawn any amounts from his retirement accounts and that, although he had tried to borrow from his Chevron 401 (k) account, he had been unable to do so because he was not then an employee of Chevron.
The former husband stated that he had been actively seeking employment since March 2009. He testified that he had sought assistance through 5 career-placement agencies and had applied for employ *27 ment with 3 engineering firms in Mobile and 15 other companies. The former husband submitted electronic-mail correspondence documenting his attempts to find employment from March 2009 through July 2010. He stated that he had not, however, been offered any position. The former wife acknowledged that she had no evidence indicating that the former husband (a) was currently employed, (b) had been offered employment, (c) had not continuously sought employment after he had been laid off, or (d) had withdrawn any funds from his retirement accounts.
The trial court entered a judgment on August 6, 2010, determining that the former husband was in contempt of court for nonpayment of periodic alimony and awarding the former wife a periodic-alimony arrearage of $24,420 to be paid from the former husband’s share of the proceeds from the sale of the marital residence. The trial court expressly denied the former husband’s motion for a temporary suspension of his obligation to make periodic-alimony payments and impliedly denied his request for a modification of the child-support provisions of the divorce judgment. The August 6, 2010, judgment includes no findings of fact, but it states that the trial court’s decision was based upon “the sworn testimony and demeanor of the witnesses.” Following the denial of his postjudgment motion, the former husband timely appealed to this court.

Standard of Review

“‘A decision to modify an award of periodic alimony is within the sound discretion of the trial court. Bush v. Bush, 784 So.2d 299, 300 (Ala. Civ.App.2000). The trial court’s judgment on this matter is presumed correct and will not be reversed unless it is unsupported by the evidence or is otherwise plainly and palpably wrong. Posey v. Posey, 634 So.2d 571, 572 (Ala.Civ.App.1994). A periodic-alimony obligation may be modified only upon a showing of a material change of circumstances that has occurred since the last award was made. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ. App.1995).
“R.L.W. v. C.L.W., 872 So.2d 876, 877 (Ala.Civ.App.2003). ‘Even if a change of circumstances is shown, the trial court is not required to grant the modification.’ Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala. Civ.App.1995) (citing Mullins v. Mullins, 475 So.2d 578 (Ala.Civ.App.1985)).
“The determination of whether a party is in contempt of court rests entirely within the sound discretion of the trial court, and, ‘ “absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” ’ Gordon v. Gordon, 804 So.2d 241, 243 (Ala.Civ. App.2001) (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)).”
Miller v. Miller, 47 So.3d 262, 264 (Ala. Civ.App.2009).
“ ‘[T]he modification of a child-support order rests soundly within the trial court’s discretion and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App.1997).’ ”
Thomas v. Campbell, 960 So.2d 694, 696-97 (Ala.Civ.App.2006) (quoting Lindsey v. Patterson, 883 So.2d 223, 225 (Ala.Civ.App. 2003)).

Suspension of Periodic Alimony

Citing Whited v. Whited, 65 So.3d 418 (Ala.Civ.App.2010); Poh v. Poh, 64 So.3d 49 (Ala.Civ.App.2010); King v. Barnes, 54 So.3d 900 (Ala.Civ.App.2010); Miller, supra; Rotar v. Weiland, 591 *28 So.2d 893 (AIa.Civ.App.1991); and Wise v. Wise, 396 So.2d 111 (Ala.Civ.App.1981), the former husband argues that the trial court ignored uncontroverted evidence demonstrating that he did not have the ability to pay periodic alimony from his current income, which income, he says, consisted solely of unemployment-compensation benefits.
We will focus on only two of the six cases cited by the former husband — Miller and Whited — because they concern periodic alimony; the other four cases deal with child support. In Miller, the divorce judgment required the former husband (who was then employed and earning $80,000 annually) to pay the former wife $1,500 per month in periodic alimony. After the divorce, the former husband lost his job and stopped making alimony payments. The former wife filed a complaint seeking a finding of contempt as to the former husband; the former husband counterclaimed, seeking to terminate his periodic-alimony obligation. The former wife did not dispute the former husband’s testimony that he had sought employment continuously since the time he had lost his job. Nor did she dispute the former husband’s testimony that his only income was $800 per month in retirement benefits. The trial court determined that the former husband was in contempt of court for failing to pay periodic alimony and refused to terminate the former husband’s periodic-alimony obligation. This court reversed, holding that, without an express finding concerning the former husband’s ability to pay periodic alimony, the trial court’s implied finding that the former husband had sufficient income to pay was unsupported by the evidence.
Miller is distinguishable because it turned on the trial court’s failure to make (or the lack of evidence to support) a finding that the obligor had the ability to pay.
In the present case, however, the trial court had already made an express finding in its September 17, 2009, judgment that, despite being unemployed, the former husband had the ability to pay the wife $2,000 per month in periodic alimony. The former husband did not appeal from that determination. Therefore, the trial court’s determination as to the former husband’s ability to pay became the law of the case. “ ‘ “Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” ’ ” McMorrough v. McMorrough, 930 So.2d 511, 514 (Ala.Civ.App.2005) (quoting Stephens v. Stephens, 699 So.2d 194, 196 (Ala.Civ.App.1997), quoting in turn Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)).
The former husband cites Whited for the proposition that when a recipient former spouse fails to rebut undisputed evidence indicating that an unemployed payor former spouse does not have the ability to pay periodic alimony, a judgment in which the trial court either makes an initial award of alimony or declines to modify an existing alimony award is not based on sufficient evidence and must be reversed. Whited, 65 So.3d at 420-21. That proposition is unassailable, but it does not help the former husband in this case for two reasons. First, unlike the obligors in Whited and Miller, the former husband acknowledged at trial that he had regularly been paying his monthly living expenses by using both his unemployment-compensation benefits and the funds in his checking and savings accounts. Compare Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ.App.2004) (affirming a judgment holding the former husband in contempt and *29 directing his brokerage firm to pay the former wife $19,200 in a lump sum to satisfy the former husband’s alimony ar-rearage because the trial court could have inferred that the former husband had withdrawn $80,000 from his individual retirement accounts (“IRAs”) “for regular living expenses and, therefore, [the trial court] was free [to] consider the ex-husband’s IRAs as a source of income from which the ex-husband could be required to pay alimony”); Yohey v. Yohey, 890 So.2d 160, 168 (Ala.Civ.App.2004) (holding that “the trial court was entitled to disbelieve the husband’s testimony [that withdrawals from his retirement accounts were for emergency needs] and to conclude that ... the husband was currently drawing benefits from and regularly relying on his retirement accounts as ‘income’ ”).
Second, as we have previously discussed, the trial court decided the issue of the former husband’s ability to pay $2,000 per month in periodic alimony on September 17, 2009 — 11 months before the trial of this case — and, because the former husband did not appeal from that judgment, the trial court’s ruling became the law of the case. The former wife had no burden of rebuttal; instead, the former husband had the burden to show that the facts upon which the September 17, 2009, judgment was predicated were not the same as the facts on August 2, 2010, when the present case was tried.
The former husband does not argue that his attempts to find employment after the hearing leading up to the September 17, 2009, judgment were more extensive than his earlier attempts from March through September 2009. In his brief to this court, the former husband has failed to explain how the evidence presented at the modification hearing regarding his job search or the economic conditions prevailing in the engineering industry differed in any material respect from the evidence presented at the hearing leading up to the September 17, 2009, judgment.
In Ex parte Murphy, 886 So.2d 90 (Ala. 2003), our supreme court stated:
“ ‘In making [a] determination [whether to modify periodic alimony], the trial court should consider such factors as the recipient spouse’s financial needs, the amount of the estate of each spouse, the ability of the payor spouse to respond to the recipient spouse’s needs, the ability of each spouse to earn income, and the remarriage of either party.”
886 So.2d at 92 (quoting Swain v. Swain, 660 So.2d 1356, 1357 (Ala.Civ.App.1995), citing in turn Marshall v. Marshall, 622 So.2d 390 (Ala.Civ.App.1993)) (emphasis added). In Shewbart v. Shewbart, 64 So.3d 1080 (Ala.Civ.App.2010), this court stated:
“Once the financial need of the ... spouse [seeking periodic alimony] is established, the trial court should consider the ability of the responding spouse to meet that need. See Herboso v. Herboso, 881 So.2d 454, 458 (Ala.Civ.App. 2003). The ability to pay may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51(a), Ala.Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties’ former marital standard of living. Her-boso, supra.”
64 So.3d at 1088 (emphasis added). See also Whited, 65 So.3d at 420; Sosebee v. Sosebee, 896 So.2d 557, 560 (Ala.Civ.App. 2004); Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995); Posey v. Posey, 634 So.2d 571, 573 (Ala.Civ.App.1994); and White v. White, 589 So.2d 740, 742 (Ala. Civ.App.1991).

*30
Contempt

The trial court had previously determined, on September 17, 2009, that the former husband had the ability to pay periodic alimony. In the trial of the present case on August 2, 2010, the former husband acknowledged that he could have made the court-ordered alimony payments by using the funds in his savings accounts but that he had chosen not to do so. The trial court was, therefore, authorized to find that the former husband had committed a “willful, continuing failure or refusal ... to comply with a court’s lawful ... order.” Rule 70A(a)(2)(D), Ala. R. Civ. P. The trial court determined that the former husband “shall be allowed to purge himself of such contempt by obeying all future orders.” The trial court entered a judgment in favor of the former wife in the amount of the alimony arrearage ($24,420) and directed that the judgment be satisfied by paying to the former wife $24,420 from the sale of the marital residence, proceeds then being held in the office of the circuit clerk. The judgment finding the former husband in contempt of court is affirmed.

Modification of Child Support

The former husband requested that the former wife’s child-support obligation be modified, because, he asserted, his share of the parties’ adjusted gross income had decreased dramatically. When the trial court found that the former husband had the capacity to earn $140,000 annually, it necessarily rejected the assertion made the basis of the former husband’s request for a modification. Further, the former husband presented no evidence indicating that the needs of the children in his custody had increased. Accordingly, the trial court’s judgment denying the former husband’s request for a modification of the former wife’s child-support obligation is due to be affirmed.
AFFIRMED.
All the judges concur.